**Clifford Holt BOGGESS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69990.

Court of Criminal Appeals of Texas, En Banc.

May 29, 1991.

Robert G. Estrada, Wichita Falls, for appellant.

Jack A. McGaughey, Dist. Atty., Montague, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON REMAND FROM UNITED STATES SUPREME COURT

OVERSTREET, Judge.

After trial by jury, appellant was convicted of capital murder and sentenced to death on October 21, 1987. That conviction and sentence was affirmed by this Court on February 1, 1989. Appellant's motion for rehearing was denied on March 8, 1989. A petition for writ of certiorari was filed in the United States Supreme Court on May 15, 1989 and on July 3, 1989 relief was granted with the judgment vacated and the case remanded to this Court 492 U.S. 915, 109 S.Ct. 3237, 106 L.Ed.2d 585 for further consideration in light of *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Pursuant to the United States Supreme Court's directions, we shall forthwith discuss issues solely relating to *Penry.*[1] In particular, appellant's claim is that the Texas capital sentencing procedure impermissibly limited his jury's discretion, effectively precluding consideration and application of mitigating evidence and the mitigating effect of such evidence.

■ The Texas capital sentencing procedure was upheld as constitutional in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Simply put, the Texas scheme of special issues adequately allows the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator, and therefore sufficiently provides for jury discretion. *Franklin v. Lynaugh,* 487 U.S. 164, 182, 108 S.Ct. 2320, 2332, 101 L.Ed.2d 155, 171 (1988). *Penry* simply held that in that particular defendant's case, the absence of some instruction informing the jury that it could, consider and give effect to the mitigating evidence of his abused background and mental retardation, by declining to impose the death penalty made that particular sentencing process violative of the Eighth and Fourteenth Amendments of the United States Constitution. *Penry,* 492 U.S. at 328–30, 109 S.Ct. at 2952, 106 L.Ed.2d at 284. It most certainly did not hold that the Texas capital punishment scheme is unconstitutional. So it would seem that to determine whether appellant's sentencing procedure did indeed impermissibly limit the jury's discretion as he alleges, we must ascertain what mitigating evidence appellant presented, or was improperly not allowed to present, if and how the jury was instructed regarding that evidence, and whether the jury was thus able to consider

---

1. As Appellant's initial brief raised only one point of error dealing with this issue, specifically Point of Error No. 3, our discussion and holdings regarding the other points shall remain undisturbed.

that evidence and express its reasoned moral response thereto in answering the special issues submitted in rendering its sentencing decision.

■ The record reflects that appellant was not denied the opportunity to present any evidence in mitigation.[2] The evidence that he did present consisted of testimony and exhibits regarding health problems which he had had as a young child (which apparently left him bow-legged and requiring corrective optical lenses, i.e. eyeglasses, for proper vision), his academic success through high school graduation, musical and artistic prowess (including performing piano recitals, playing at weddings, and writing poetry), religious activities from a very young age through high school, employment at various stages in his life, and educational, religious and work activities during prison incarceration. The jury charge also included the instruction:

> "You may also consider all facts and circumstances admitted into evidence before you in extenuation and mitigation of the conduct and/or probable future conduct of the defendant."

The above quoted instruction clearly directed the jury's attention to Special Issue Number Two which stated:

> "Do you find from the evidence, beyond a reasonable doubt, that there is a probability that the defendant, Clifford Holt Boggess, would commit criminal acts of violence that would constitute a continuing threat to society?"

What appellant was constitutionally guaranteed was an individualized assessment of the appropriateness of the death penalty, with the opportunity to present all evidence which might provide a basis for mitigation, i.e. a sentence less than death, and that the jury be provided a vehicle for considering such evidence and responding thereto in its verdict. We hold that such was provided to appellant.

The above described evidence presented appellant in a light more favorable than did the facts of the capital murder offense that he had just been found guilty of committing. As such, it may have indicated to the jury that he was less deserving of a sentence of death. That mitigating evidence was relevant to the above described Special Issue Number Two in that it presented appellant in a non-violent posture that may have indicated to the jury that the special issue must be answered in the negative.[3] The above described jury instruction properly directed the jury's attention to all of the evidence (including that mitigating in favor of a sentence less than death).[4] The above described Special Issue Number Two provided an adequate vehicle for the jury to consider and respond to the particular mitigating evidence presented.

■ This case is not identical to *Penry*, or *Franklin*, or any other capital case because each and every capital case involves its own singular set of facts, mitigating and otherwise, and each case's jury must make its own particularized reasoned moral response to that particular case's assortment of evidence. What is required is that sentencers be allowed to consider and give effect to mitigating evidence in imposing the sentence so that an individualized determination of whether death is the appropriate punishment in each particular case can be made; i.e. that there be an individualized assessment of the appropriateness of the death penalty. While both *Penry* and *Franklin* were tried with the same special issues submitted to the jury as was appellant, and both presented mitigating evidence (though the quantity differed somewhat), the facts and evidence in *Franklin*

---

2. In fact the record indicates that not a single objection was made regarding any of Appellant's proffered evidence during the sentencing stage of the trial.

3. We note that Appellant's mitigating evidence seems to be one-edged rather than the two-edged evidence mentioned in *Penry,* in that Appellant's evidence would seem to solely have the effect of possibly diminishing his blameworthiness rather than indicating that there is a probability that he will be dangerous in the future.

4. Said instruction may, or may not, be the perfect method for directing a jury to properly focus upon mitigating evidence. We merely hold that based upon the unique set of facts in this case, said instruction sufficiently performed that function.

were such as to sufficiently allow the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator in making its sentencing decision, but the facts and evidence in *Penry* were such that the same sentencing scheme was not sufficient. We hold that this same sentencing scheme, which included a jury instruction that it could take into consideration all of the facts and circumstances admitted into evidence, did adequately allow the jury to consider all of appellant's mitigating evidence and make and express its own particularized reasoned moral response thereto.

We therefore affirm the judgment and sentence of the trial court.

CAMPBELL and BENAVIDES, JJ., concur in result.

CLINTON, Judge, dissenting.

The majority puts too much stock in the *plurality* opinion in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988). Five Justices would not accept "a scheme that is limited in such fashion," *id.*, at 183, 108 S.Ct., at 2332, 101 L.Ed.2d, at 172, and, of course, they formed the majority the next term when our scheme was reexamined in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In a word, the *Franklin* plurality is passe'. "For the first time, [in *Penry v. Lynaugh*, supra] a majority of the Supreme Court has agreed that the Texas scheme, *as applied*, does not in practice conform to the constitutional requirements of *Lockett* [*v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ]." Clarke, *A Reasoned Moral Response: Rethinking Texas's Capital Sentencing Statute after Penry v. Lynaugh*, 69 Texas L. Review

407, at 463 (1990).[1] Accord: *Gribble v. State*, 808 S.W.2d 65 (Tex.Cr.App. No. 70,-773, delivered November 14, 1990).[2]

We start then with the proposition that the majority grievously errs when it flatly says that *Penry* "most certainly did not hold the Texas capital punishment scheme is unconstitutional." 855 S.W.2d at 646. It is not *facially* unconstitutional; it is unconstitutional *as applied* to so-called "*Penry* evidence."

Therefore, this Court must always vigilantly guard against "the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett*, supra, 438 U.S., at 605, 98 S.Ct., at 2965, 57 L.Ed.2d, at 990. That this cause is before us on remand from the Supreme Court for further consideration in light of *Penry* makes our duty even more compelling.

The central formulation of *Penry* was taken verbatim from the concurring opinion in *Franklin*, viz:

"If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, OR *that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions*, the jury instructions would have provided the jury with no vehicle for expressing its 'reasoned moral response' to that evidence."

*Penry*, 492 U.S. at 321, 109 S.Ct., at 2948, 106 L.Ed.2d, at 280; *Franklin*, at 185, 108 S.Ct., at 2333, 101 L.Ed.2d, at 173. See *Gribble*, supra; for detailed examination of *Franklin* and *Penry*, see *Boyd v. State*,

---

1. All emphasis is mine throughout this opinion unless otherwise indicated.

2. "The Texas capital sentencing scheme does not invariably operate in such a way as to violate the Eighth Amendment. *See Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). But, at least whenever a capital defendant produces evidence of his own character, background, or the circumstances surrounding his

offense which ... has a tendency to reduce his moral culpability in a way not exclusively related to the deliberateness of his criminal conduct, the provocative behavior of his victim, or the probability of his future dangerousness, *the United States Constitution forbids imposition of the death penalty upon him by a sentencer given no means to prescribe, based on such mitigating evidence, a less severe punishment. Penry v. Lynaugh,* [supra]." 808 S.W.2d at 75.

811 S.W.2d 105 (Tex.Cr.App.1991) (Clinton, J., dissenting).

Today, the majority is content to inquire whether mitigating evidence is relevant to the special issues; it gives scant attention to the second prong of the *Penry* formulation in light of evidence presented by appellant—the same evidence also discussed and analyzed for the Supreme Court by the parties in their certiorari papers and presumably considered by it before remanding the cause. It believed that evidence raises *Penry* issues.

In his brief on remand at 4–5, appellant outlines his evidence offered through "extensive" testimony and exhibits, which the State does not dispute but naturally interprets from its standpoint. State's Brief, at 16, 18–19 and 21. A rearranged summary follows.

Appellant was abused and neglected by his natural mother from infancy through early years, suffering from malnutrition and other mistreatment that caused his legs to bow, his eyes to "roll" and his vision to deteriorate, such that the State of Texas removed him from her custody and put him in a series of foster homes until it finally placed him with adoptive parents. They divorced. His father obtained custody, but was away on military duty overseas. His grandparents took over and raised him.

Appellant became a good student; in high school he achieved success in academic standing and sports; he developed into an accomplished pianist, playing at school, weddings and church functions; he participated in other church activities, singing in the choir; he also worked to earn his keep.

After graduating high school, appellant left home, garnered a good work record, but at some point began running with the "wrong crowd." He used and appears to have abused controlled substances, described variously as "narcotic drugs," "dope" and "8 balls," before and near the time of the instant July 23, 1986 offense. On August 17, 1986 appellant killed a man during the course of robbery in Grayson County; on January 16, 1987, he pleaded guilty to murder, and was sentenced to life. In TDC he gained a record of good behavior where he is still confined.

Appellant was born June 11, 1965; the instant offense was committed shortly after appellant became twenty one years of age; he was twenty two at time of trial in October 1987.

Better than any other case presently under active consideration by the Court, this one presents at once a variety of mitigating evidence deemed by the Supreme Court to be *"Penry* evidence," e.g., background, character, record and circumstances of offense. Yet, with cursory treatment adhering much too closely to lines of the *Franklin* plurality, the majority believes the mitigating evidence did not encompass anything more than those matters considered by the jury in answering the second special issue. See *Franklin,* 487 U.S. at 178, 108 S.Ct., at 2329, 101 L.Ed.2d, at 168.

The majority simply dismisses germane contrary authority on the ground that "each and every capital case involves its own singular set of facts." Op. at 647. For one most illuminating example, in *Penry* the Supreme Court specifically addressed his *"abused childhood"* and demonstrated that such evidence "has relevance to his moral culpability beyond the scope of the special issues, and that the jury was unable to express its 'reasoned moral response' to that evidence in determining whether death was the appropriate punishment," because it "was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision." *Id.,* at 321, 328, 109 S.Ct., at 2948, 2952, 106 L.Ed.2d, at 280, 284. That Penry was also mentally retarded does not rule out the mitigating impact accorded a history of abuse; for the Supreme Court, Justice O'Connor invariably stressed the latter as well as the former. *Ibid.*

Comparing mitigating evidence in *Franklin* and *Penry,* the majority says "the *quantity* differed somewhat." Op. at 647. Actually the real difference is in *quality.* In *Franklin* the sole mitigating evidence is a stipulation that during incar-

ceration his disciplinary record was without incident. *Id.*, at 168, 108 S.Ct., 2324, 101 L.Ed.2d, at 182. In *Penry* it is mental retardation, arrested emotional development and childhood abuse. *Id.*, at 324–326, 109 S.Ct., at 2950, 106 L.Ed.2d, at 281–282. However otherwise classified, the nature of mitigating evidence in *Franklin* is positive, while that in *Penry* is negative. And what the majority overlooks is that in *Franklin* five Justices regarded as probative character evidence "voluntary service, kindness to others [and] religious devotion." *Id.*, at 186, 190, 108 S.Ct., at 2333, 2336, 101 L.Ed. 2d, at 173, 176.[3]

Equally probative character evidence is shown by indicia of traits attributed to appellant in his adolescence by and through his witnesses and exhibits. See *ante*, at 647. As well as other positive indicia of character, they also speak to voluntary service as a pianist at school and church functions, concomitant kindness to others and religious devotion during his school years.[4] When the Supreme Court defines evidence

as "relevant" for Eighth Amendment purposes, this Court is not at liberty to regard it otherwise, and I, for one, and Judge Baird, for two, do not.

After high school appellant pursued gainful employment and earned a good record on the job. On the dark side, however, he was exposed to and became involved in an alternative lifestyle in terms of companions and activities, including using and perhaps abusing controlled substances. His employer testified appellant last worked on July 23, 1986; the instant offense was committed that evening, according to circumstantial evidence, by appellant.[5] Neither *Franklin* nor *Penry* directly address this paradoxical situation.

Since *Penry* a reviewing court may not summarily say, as the majority does here, that the special issues "allowed the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator in making its sentencing deci-

---

**3.** With Judge Baird, I too am confident that this interplay between concurring and dissenting opinions recognizes telling indicia of positive character traits. Baird, J., dissenting, Op. at 654, n. 3. Moreover, given generally accepted definitions of character, *Boyd v. State,* supra (Clinton, J., dissenting) Op. at 654, n. 3, that the departure of one of those five Justices would alter that view is highly unlikely. There is agreement everywhere that moral character has probative value in proper contexts. Tex.R.Cr. Evid. Rule 404(a) and (c); Tex.R.Civ.Evid. Rule 404; Fed.R.Ev. Rule 404; Ray, Law of Evidence, §§ 1492, 1501 and 1506, 2 Texas Practice 169, 187 and 190.

**4.** His subsequent confinement in TDC is another matter that, of course, is not taken into account in identifying traits of character appellant exhibited while in high school and on the job. The effect of making a record without blemish in the highly structured environment of prison will be considered *infra.*

**5.** Several witnesses recounted recent conversations in which appellant discussed robbing "an old man in Saint Jo," and sought to enlist their aid and assistance in carrying out the venture.

Around noon on the day of the offense Grover Clevenger was driving through Gainesville on his way to Muenster when he saw appellant walking along the highway; he stopped, picked up appellant and they proceeded on to Muenster, pausing once for a few beers, which Cle-

venger bought because appellant said he was broke. Learning that appellant was making his way to Saint Jo, Clevenger drove him there and let him off in a park. After twenty minutes or so, as Clevenger was leaving town appellant flagged him down, told Clevenger he had picked up a check, offered to pay twenty dollars for gas and, after Clevenger declined, then offered to buy his car for $500. Back in Gainesville, they went to the VFW Hall to drink beer and appellant paid for all the beer they consumed.

Meanwhile, in Saint Jo, between six and seven in the evening, several witnesses sighted appellant in and around town near, and one saw him in, the store of Frank Collier, the deceased. Just after seven o'clock another witness entered the store and discovered Collier lying in a puddle of blood in a storage room. Medical testimony established that cause of death was a cutting of the throat, a stab wound to the face and blunt force injuries to the head and chest. One pants pocket had been pulled out and was bloody; the back pants pocket contained $950. No physical evidence at the scene linked appellant to the crime.

Two erstwhile companions and an inmate sharing a cell with appellant related subsequent conversations with appellant recounting his travels and describing details of the killing. Appellant contended at least three other persons had previously discussed robbing Collier because he carried a large amount of cash.

On original submission, this Court found the circumstantial evidence sufficient to support the verdict and judgment of conviction.

sion." Op. at 648.[6] A more particularized examination than the majority makes is required.

The mitigating evidence adduced in this cause may be viewed as three acts in a play based on the first twenty one years in the life of appellant, *viz:* abusive early childhood; exemplary adolescence; dichotomous majority—productive yet self-destructive. The first is negative in nature; the second is positive; the third is mixed.

We know now that the negative first is *"Penry* evidence," and that the positive second is *"Franklin* evidence" as discerned by a majority of the Supreme Court. But what of the mixed third?

Appellant was then twenty one years of age. Jurors are entitled to believe that age has a bearing on moral culpability that transcends the particular factual questions posed by the special issues. Even a juror who is persuaded that a capital defendant killed deliberately and without provocation, and is likely to be a continuing threat to society, can yet judge his youth to be valid reason to assess a penalty less than death. The decisions underlying *Penry* support the proposition that youth necessarily has Eighth Amendment relevance as mitigating evidence, quite apart from whatever bearing it may have under our special issues.[7]

As the State capsules it, "[A]ll evidence of the appellant's youth ... to the point where he became a murderer shows a well-adjusted, loving, disciplined person[.]" State's Brief, at 20. That is to say among other facts, that appellant had not generated a prior criminal record. Against that background, the fact of his relative youth takes on significant mitigating potential which cannot be fully encompassed within the special issues. *Lockett, Bell* and *Eddings,* all supra, at n. 7.

The State proved but one prior conviction, that for the murder committed a month after the instant offense and for which he had been serving time without untoward behavioral incident in TDC and probably county jail since January 1987. Past conduct "often provides insights into a person's character that will evoke a merciful response to a demand for the ultimate punishment even though it may shed no light on what may happen in the future[.]" *Franklin,* at 190, 108 S.Ct., at 2336, 101 L.Ed.2d, at 176 (Stevens, J., dissenting and concurring). And even if past good behavior in prison *alone* reveals nothing more positive except that one can exist in such a structured environment without endangering others, *Franklin,* at 186, 108 S.Ct., at 2334, 101 L.Ed.2d, at 174 (O'Connor, J.,

---

**6.** The majority must be paraphrasing the language Justice Scalia took for his dissenting opinion in *Penry* from the plurality opinion of Justice White in *Franklin, id.,* at 182, 108 S.Ct., at 2332, 101 L.Ed.2d, at 171, that originated in the opinion delivered by Chief Justice Rehnquist in *Lowenfield v. Phelps,* 484 U.S. 231, 245, 108 S.Ct. 546, 555, 98 L.Ed.2d 568, 582 (1988). *Penry,* at 356–358, 109 S.Ct., 2967, 106 L.Ed.2d, at 304. It is, in turn, derived from *Jurek v. Texas,* 428 U.S. 262, at 271–274, 96 S.Ct. 2950, at 2956–2957, 49 L.Ed.2d 929, at 937–939 (1976). Manifestly that is no longer the prevailing view of our capital punishment scheme either in the Supreme Court, *Penry,* or in this Court, *Gribble.*

**7.** In *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a plurality of the Supreme Court led by Chief Justice Burger invalidated the death sentence of a twenty one year old defendant. The Ohio statute prescribed three defined mitigating circumstances; although such factors as age and criminal record might be considered in determining whether any of the statutory mitigating circumstances existed, the sentencer could not regard them "independently" as justifications for a sentence

less than death. The plurality held these limitations on the range of mitigating circumstances is incompatible with recent Eighth Amendment jurisprudence, most notably *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). In a companion case, *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978), the same plurality overturned the death penalty for a defendant who was sixteen years old at the time of the offense.

In *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), the Supreme Court adopted the *Lockett* holding. The Oklahoma statute provided for consideration of "any mitigating circumstances," and the trial court did take Eddings' age, sixteen, into account in assessing punishment. The Supreme Court noted approvingly, "The trial judge recognized that youth *must* be considered a relevant mitigating factor." *Id.,* at 115, 102 S.Ct., at 877, 71 L.Ed.2d, at 11. Because the trial judge declined to consider troubled circumstances of Eddings' upbringing, however, his death sentence was also overturned, on authority of *Lockett.*

concurring), still, coupled with past well-adjusted, loving and disciplined traits, that positive behavior "may suggest that the conduct for which defendant stands convicted was not in keeping with his usual qualities or traits, a fact that has as much relevance to culpability as to future dangerousness." *Franklin*, at 190, 108 S.Ct. at 2336, 101 L.Ed.2d, at 176 (Stevens, J., concurring and dissenting).

Thus here, this appellant demonstrated that he possessed the strength of character to compensate for his troubled childhood; he developed into a talented, impeccable adolescent and was completely without penal cognizance or social fault in his majority status until taking up with "the wrong crowd," and then seeking to make them confederates in a robbery they testified he was planning.

The majority perceives the mitigating evidence as "one-edged" in that it seems to have "the [sole] effect of possibly diminishing his blameworthiness" for the crime, but is unable to see it as *"Penry* evidence," because it is also relevant to special issue two in that it "presented appellant in a non-violent posture[.]" Op. at 647, n. 3. That analysis rejects the view that positive character evidence can have some mitigating potential beyond the scope of the second special issue, that it may well evoke a "reasoned moral response" from jurors who, in judging his personal moral culpability under proper instruction, are willing to take into account that appellant may have been unduly influenced by his recent association with newly found companions who apparently led him into controlled substances use, if not abuse, and discussing, if not planning, this very offense.

The particular instruction relied on by the majority failed to provide the jury with a proper mechanism for expressing its "reasoned moral response" to the clear mitigating evidence in this record. See Op. at 647. Manifestly, it effectively limited the jury to considering evidence in responding to the special issues, and failed to provide a

vehicle for the jury to consider and *give effect to* mitigating evidence relevant to appellant's background, character, record and circumstances of the offense. *Penry*, at 326–330, 109 S.Ct., at 2951–52, 106 L.Ed. 2d, at 284.

As we cautioned in *Gribble:*

"This is not to say that the jury must assess a penalty less than death for all defendants who offer mitigating evidence at trial. But jurors may not be precluded from doing so by omission from the court's charge of a means to express their will. *Penry v. Lynaugh, supra."*

808 S.W.2d at 76.

Upon further consideration in light of *Penry* on remand from the Supreme Court, because the jury in this cause was so precluded, we should reverse the judgment of the trial court and remand the cause to that court.

MALONEY, J., joins.

BAIRD, Judge, dissenting.

After this Court affirmed appellant's conviction, the Supreme Court granted appellant's petition for a writ of certiorari, vacated the judgment of affirmance and remanded the case to this Court "for further consideration in light of *Penry v. Lynaugh."* Considering appellant's cause "in light of" *Penry* is not a simple task, as there has been a dearth of guidance from the Supreme Court in death penalty jurisprudence.[1] See also, *Baldree v. State*, 810 S.W.2d 213 (Tex.Cr.App. delivered this date) (Baird, J., dissenting); *Lackey v. State*, 819 S.W.2d 111 (Tex.Cr.App. delivered this date) (Baird, J., dissenting).

## I. HISTORICAL PERSPECTIVE

As I understand the United States Supreme Court's evolving concept of death penalty jurisprudence, there is a qualitative difference between death and other penalties which calls for a greater degree of

---

1. At least one current member of the Supreme Court has recognized the "inherent tension" between the Supreme Court's opinions. *Walton v.* *Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 3063, 111 L.Ed.2d 511 (1990) (Scalia, J., concurring).

reliability when the death penalty is imposed. *Woodson v. North Carolina,* 428 U.S. 280, 304–305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1978). The sentencer must treat the criminal defendant as a "uniquely individual human being" to make a reliable determination that death is the appropriate sentence. *Id.,* 428 U.S. at 304, 96 S.Ct. at 2991. Therefore, a death penalty statute must afford the jury "guided discretion" in the imposition of sentence. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The statute may not preclude the sentencer from considering, and the sentencer may not refuse to consider, any mitigating evidence. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Mitigating evidence is "any aspect of a defendant's character or record and any of the circumstances of the offense" that may serve as a basis for a sentence less than death. *Lockett,* 438 U.S. at 604, 98 S.Ct. at 2964–65; *Eddings,* 455 U.S. at 110, 102 S.Ct. at 874. The punishment should be directly related to the personal culpability of the criminal defendant. *Franklin v. Lynaugh,* 487 U.S. 164, 184–186, 108 S.Ct. 2320, 2332, 101 L.Ed.2d 155 (1988); *Penry v. Lynaugh,* 492 U.S. 302, 318–320, 109 S.Ct. 2934, 2947, 106 L.Ed.2d 256 (1989). The Texas capital sentencing scheme passes constitutional muster, *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), except where the jury is not provided with a vehicle to give mitigating effect to mitigating evidence when imposing sentence. *Penry,* 492 U.S. at 318–320, 109 S.Ct. at 2947.

## II. HARMONIZING *FRANKLIN* AND *PENRY*

On the face of the remand, the issue appears simple; however, the issue is anything but simple because of the apparent tension between *Franklin* and *Penry.* In her concurrence to the plurality opinion in *Franklin,* Justice O'Connor explained:

... [A] State may not constitutionally prevent the sentencing body from giving effect to evidence relevant to the defendant's background or character or the circumstances of the offense that mitigates against the death penalty. Indeed, the right to have the sentencer consider and weigh relevant mitigating evidence would be meaningless unless the sentencer was also permitted to give effect to its consideration.

... To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was *not relevant to* the special verdict questions, or that had relevance to the defendant's moral culpability *beyond the scope of* the special verdict questions, the jury instructions would have provided the jury with no vehicle for expressing its "reasoned moral response" to that evidence....

The limited probative value of the stipulation regarding petitioner's lack of prison disciplinary violations is best illustrated by the contrasting examples of probative character evidence suggested by the dissent. (Citation omitted.) Evidence of voluntary service, kindness to others, or of *religious devotion* might demonstrate positive character traits that might mitigate against the death penalty....

*Franklin,* 487 U.S. at 184–186, 108 S.Ct. at 2333–35 (O'Connor, J., joined by Blackmun, J., concurring) (emphasis added).[2]

**2.** The sole mitigating evidence presented by Franklin was the stipulation that his disciplinary record while incarcerated from 1971–1974 and 1976–1980 was without incident. *Franklin,* 487 U.S. at 167–169, 108 S.Ct. at 2324.

Franklin submitted five "special requested" jury instructions in addition to the two Special Issues submitted by the trial court pursuant to

Art. 37.071(b). Franklin's instructions would have told the jury that any evidence considered by them to mitigate against the death penalty should be taken into account in answering the Special Issues submitted by the trial court, and that Franklin's mitigating evidence could alone be enough to return a negative answer to either one or both of the Special Issues, even if the

The following term, Justice O'Connor spoke for a majority of the Supreme Court in *Penry* which held that our capital sentencing scheme was unconstitutional as applied to Penry because the jury was unable to express its reasoned moral response to the evidence of Penry's abusive childhood and mental retardation in determining whether death was the appropriate punishment. *Penry*, 492 U.S. at 320–322, 109 S.Ct. at 2948.[3] Specifically, the Court held:

> In order to ensure "reliability in the determination that death is the appropriate punishment in a specific case" [citation omitted], the jury must be able to consider and give effect to a defendant's background, character, or the circumstances of the crime.
>
> In this case, in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its "reasoned moral response" to that evidence in rendering its decision. Our reasoning in *Lockett* and *Eddings* thus compels a remand for resentencing so that we do not "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." [Citations omitted.] "When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the

Eighth and Fourteenth Amendments." [Citation omitted.]

*Id.*, 492 U.S. at 328, 109 S.Ct. at 2951–52.

It is not now clear whether Justice O'Connor's concurring opinion in *Franklin* speaks for a majority of the Supreme Court.[4] It could be argued, as a majority of this Court does today, that *Penry* is limited to providing the jury with a vehicle to express its reasoned moral response only to mitigating evidence which falls "beyond the scope of" the special issues. This type of mitigating evidence is often characterized as two-edged sword evidence, such as Penry's mental retardation. See *Baldree*, 810 S.W.2d at 217 (Baird, J., dissenting). On the other hand, one might argue that *Penry* brings forward the concept in *Franklin* that the jury must also be given a vehicle to express its reasoned moral response to evidence "not relevant to" the special issues. *Franklin*, 487 U.S. at 186–188, 108 S.Ct. at 2333 (O'Connor, J., joined by Blackmun, J., concurring).

Arguably, the Supreme Court's opinions dealing with death penalty jurisprudence raise more questions than they answer. However, we are bound to read the cases as consistently as possible in an effort to harmonize the opinions. It is clear that Justice O'Connor relied heavily on her concurrence in *Franklin*, both inferentially and by specific quotation, to reach the decision in *Penry*, 109 S.Ct. at 2948.

jury otherwise believed that "yes" answers to the special issues were warranted. *Id.*, 487 U.S. at 167–171, and n. 4 at 169, 108 S.Ct. at 2324–2325 and n. 4 at 2324.

**3.** Penry suffered from organic brain damage and was mentally retarded. Penry was unable to learn from his mistakes. Penry's brain damage was probably caused at birth, but may have been caused by beatings and multiple injuries to the brain at an early age. Penry was frequently beaten over the head with a belt when he was a child. Penry was unable to learn in school and never finished the first grade. It took Penry over a year to learn how to print his name. Penry was routinely locked in his room without access to a toilet for long periods of time. *Penry*, 492 U.S. at 307–309, 109 S.Ct. at 2941.

Penry objected to the charge submitted to the jury because it failed to authorize a discretion-

ary grant of mercy based upon the existence of mitigating circumstances and because it failed to require as a condition to the assessment of the death penalty that the State show beyond a reasonable doubt that any aggravating circumstances found to exist outweigh any mitigating circumstances. *Id.*, 492 U.S. at 309–311, 109 S.Ct. at 2942. Penry's objections were overruled and the trial court submitted the three special issues to the jury pursuant to Art. 37.071, Tex. Code Crim.Proc.Ann.

**4.** At first blush, simple mathematics appears to tell us that Justice O'Connor's view is shared by five members of the Supreme Court, the two Justices concurring in *Franklin* and the three Justices dissenting in *Franklin*. See n. 7, infra. However, Justice Brennan's departure from the Court leaves us guessing as to whether this view is held by five members of the current Supreme Court.

My attempt to reconcile those opinions renders the following conclusion: If a criminal defendant offers mitigating evidence "not relevant to" the special issues (e.g., evidence of positive character traits) and/or "beyond the scope of" the special issues (e.g., disadvantaged background, or emotional or mental problems) and the mitigating evidence has a practical and/or constitutional significance to a criminal defendant's moral culpability, the Texas capital sentencing scheme would violate the Eighth and Fourteenth Amendments unless the trial court provided the jury with a vehicle to express its reasoned moral response to the mitigating evidence.[5] See also *Baldree*, 810 S.W.2d at 217 (Baird, J., dissenting). Therefore, when a criminal defendant offers mitigating evidence "not relevant to" the special issues or evidence "beyond the scope of" the special issues, the defendant is constitutionally entitled to have the jury provided with a vehicle to give mitigating effect to that evidence.[6] In the absence of such an "appropriate instruction" a reasonable juror could conclude that there is no vehicle for expressing the view that the defendant does not deserve to be sentenced to death based upon the mitigating evidence. See *Penry*, 492 U.S. at 324–326, 109 S.Ct. at 2950.[7] Harmonizing the opinions in this way removes the tension between *Franklin* and *Penry*.

## III. ISSUES AND ANALYSIS

This remand presents two questions. First, is appellant's mitigating evidence sufficient to rise to the level of religious devotion? As noted in the majority opinion, appellant's mitigating evidence included evidence of "religious activities from a very young age through high school" and religious activities during prison incarceration. *Boggess*, Op. at 647. I believe appellant's jury could have characterized the evidence as demonstrating the positive character trait of religious devotion which might mitigate against the death penalty.[8]

Having answered the first question in the affirmative, we must answer the second question: Was appellant's mitigating evidence of religious devotion *"Penry* evidence" or *"Franklin* evidence?" In other words, was appellant's mitigating evidence of religious devotion "not relevant to" and/or "beyond the scope of" the special issues? If so, art. 37.071 was unconstitutional as applied because it failed to provide

**5.** This is not to say that all evidence "not relevant to" the special issues is limited to positive character traits or that all evidence "beyond the scope of" the special issues is limited to disadvantaged background or emotional or mental problems. Relevant mitigating evidence is not that easily pigeonholed. Necessarily, relevant mitigating evidence that is "not relevant to" the special issues will also be "beyond the scope of" the special issues.

**6.** The Supreme Court suggests that the vehicle be "appropriate jury instruction[s]", but does not provide us with an example of what such an "appropriate" instruction might be. *Penry*, 492 U.S. at 326, 109 S.Ct. at 2950.

**7.** If *Penry* carries forward the concept of positive character traits as I believe, the question becomes what constitutes positive character traits. We are provided a hint of Justice O'Connor's position when she cited to the "contrasting examples of positive character evidence" suggested by the dissenting opinion to *Franklin*. *Franklin*, 487 U.S. at 186, 108 S.Ct. at 2333, (O'Connor, J., joined by Blackmun, J., concurring) *citing*, *Franklin*, 487 U.S. at 190, 108 S.Ct. at 2336, (Stevens, J., joined by Brennan and

Marshall, JJ., dissenting). In that dissent, Justice Stevens refers to "honorable military service or kindness to those in the defendant's community or regular church attendance. Although it may aid the sentencer in predicting the defendant's future conduct, it also tells something about the defendant's personality. Importantly, for example, it may suggest that the conduct of which the defendant stands convicted was not in keeping with his or her usual qualities or traits, a fact that has as much relevance to culpability as to future dangerousness." *Franklin*, 487 U.S. at 190–193, 108 S.Ct. at 2336, (Stevens, J., joined by Brennan and Marshall, JJ., dissenting).

**8.** As religious devotion was specifically mentioned as a positive character trait by five Supreme Court justices in the concurring and dissenting opinions to *Franklin*, 487 U.S. at 186–189, 108 S.Ct. at 2333–34 (O'Connor, J., joined by Blackmun, J., concurring); *Id.*, 487 U.S. at 192–194, 108 S.Ct. at 2336 (Stevens, J., joined by Brennan and Marshall, JJ., dissenting), we need not decide whether appellant's "academic success" and "musical and artistic prowess" rise to the level of positive character traits. *Boggess*, Op. at 647.

the jury with a vehicle to give effect to appellant's mitigating evidence. On the other hand, if appellant's mitigating evidence was given its fullest mitigating effect through the special issues, then art. 37.071 was constitutional as applied to appellant.

Religious devotion is a positive character trait not necessarily relevant to the special issues and may fall beyond the scope of the special issues. See *Franklin*, 487 U.S. at 186–189, 108 S.Ct. at 2333–34 (O'Connor, J., joined by Blackmun, J., concurring), and *Id.*, 487 U.S. at 192–194, 108 S.Ct. at 2336 (Stevens, J., joined by Brennan and Marshall, JJ., dissenting). Article 37.071 failed to provide the jury with a vehicle to express its reasoned moral response to the positive character trait of religious devotion.[9] In the absence of such a vehicle, the capital sentencing scheme in appellant's case was applied in an unconstitutional manner.

Therefore, in accord with what I perceive to be the dictates of *Franklin* and *Penry*, I respectfully dissent to the result reached by the majority.

---

9. In addition to submitting the two special issues pursuant to art. 37.071, the trial court instructed the jury as follows: "You may also consider all facts and circumstances admitted into evidence before you in extenuation and mitigation of the conduct and/or probable future conduct of the defendant."