**Ex parte Earnest Orville BALDREE.**

**No. 71114.**

Court of Criminal Appeals of Texas, En Banc.

May 29, 1991.

Patrick C. Batchelor, Dist. Atty., and John H. Jackson and Robert Carroll, Asst. Dist. Attys., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Art. 11.07, V.A.C.C.P.

Applicant was convicted of capital murder on December 8, 1986, and sentenced to death by the trial judge. Art. 37.071(e), V.A.C.C.P. This Court affirmed applicant's convictions and sentences on direct appeal. *Baldree v. State,* 784 S.W.2d 676 (Tex.Cr.App.1989). Applicant's petition for writ of certiorari was denied by the United States Supreme Court on May 14, 1990. *Baldree v. Texas,* —— U.S. ——, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990).

Applicant presents fourteen allegations in this application challenging the validity of his convictions and sentences. On September 11, 1990, without holding an evidentiary hearing, the judge of the convicting court recommended applicant be denied relief. On September 17, 1990, this Court ordered this cause filed and set for submission on only applicant's first allegation. We also granted applicant a stay of execution pending further orders from this Court.

In his first allegation, applicant claims the issues presented to his sentencing jury pursuant to Art. 37.071(b)(1) and (2) precluded the jury from considering or giving effect to the mitigating evidence he offered at trial. Applicant relies on both *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (O'Connor, J., joined by Blackmun, J., concurring), for relief. Applicant did not object to the jury charge at punishment on this basis or raise this issue on direct appeal.[1] See *Baldree,* 784

Kemp W. Gorthey, Austin, for appellant.

---

1. Applicant did object, however, to the failure of the trial judge to define "deliberately" as that

S.W.2d at 678, (no supplemental appellate brief although original brief filed years before *Penry* was decided and this Court's opinion rendered months thereafter). Thus, this application presents us with applicant's *"Penry* issue" for the first time. Recently, this Court determined this claim is cognizable via a writ of habeas corpus despite an applicant's failure to raise this issue on direct appeal. *Ex parte Goodman* (Tex.Cr.App. No. 70,887 delivered May 29, 1991), slip op. at pp. 3-4.[2] We therefore will address the merits of applicant's contention.

In *Franklin,* 108 S.Ct. 2320, the petitioner contended, *inter alia,* that his sentencing jury did not adequately consider his good prison disciplinary record. *Id.* 108 S.Ct. at 2328. Franklin argued this mitigating evidence, which was the only such evidence introduced, "had significance independent of its relevance to the Special Issues—as a reflection on his 'character[,]' " and requested a jury instruction which would allow the jury to impose a life sentence even if it answered "yes" to both punishment issues submitted. *Id.* 108 S.Ct. at 2329. A plurality of the Supreme Court concluded the jury's consideration of Franklin's mitigating evidence was not improperly limited because the jury was free to give appropriate weight to this evidence through its consideration of the second special issue. *Id.* 108 S.Ct. at 2330. Thus, Franklin was not sentenced to death in violation of the Eighth Amendment.

*Franklin* foreshadowed the Supreme Court's opinion in *Penry,* 109 S.Ct. 2934, the following term. Penry argued that his mitigating evidence of mental retardation and child abuse had relevance to his moral culpability beyond the scope of the special issues under Art. 37.071(b), and that the jury was unable to express its "reasoned moral response" to that evidence in determining whether death was the appropriate punishment. *Id.* 109 S.Ct. at 2948. The Supreme Court agreed and stated a special instruction with regard to the mitigating evidence was necessary.[3]

The Court addressed the need for the additional instruction in light of the three punishment issues. Art. 37.071(b)(1), (2), & (3). As to the first special issue, the Court opined that without this instruction "a juror who believed that Penry's retardation and background diminished his moral culpability and made imposition of the death penalty unwarranted would be unable to give effect to that conclusion if the juror also believed that Penry committed the crime 'deliberately'." 109 S.Ct. at 2949. The Court recognized the double-edged sword characteristic of Penry's mitigating evidence under the second special issue. That is, the very evidence which may diminish his blameworthiness also indicated there was a probability that he would be a continuing threat to society. Thus, the second special issue did not provide a vehicle for the jury to give mitigating effect to Penry's "mitigating" evidence. *Id.* Likewise, the Court found the third special issue addressing provocation, which was given in Penry's jury charge, failed to allow a juror who believed Penry lacked the moral culpability to be sentenced to death to express that view in this issue if the juror concluded Penry's action was not a reasonable response to the provocation. *Id.* 109 S.Ct. at 2950. Thus, as applied to Penry, Art. 37.071 was unconstitutional.

Applicant asserts the mitigating circumstances presented during his trial fell into two distinct categories, to-wit: (1) mitigating evidence that was not relevant to the special verdict questions, and (2) mitigating evidence and circumstances that are arguably relevant to the punishment issues but that have relevance to his moral culpability

---

term is used in the first punishment issue. He claims this objection is sufficient to preserve the *Penry* claim. Given our decisions in *Goodman* and *Black, infra,* we need not address this contention.

**2.** Also, applicant's failure to specifically object on this basis would not procedurally bar his

claim. See *Black v. State* (Tex.Cr.App. No. 69,-648 delivered May 29, 1991) (Campbell, J., concurring to Part II.B.).

**3.** Penry had requested a type of such an instruction during the punishment phase which, of course, was denied.

beyond the scope of the issues. As to his first assertion, applicant relies upon dicta in Justice O'Connor's concurrence in *Franklin,* 108 S.Ct. at 2333,[4] and Justice Scalia's dissent in *Penry,* 109 S.Ct. at 2966,[5] to support his claim that our capital murder sentencing scheme is unconstitutional as applied to him. Applicant does not indicate which of his mitigating evidence falls into this category, or the other category for that matter. He notes, however, that Penry's mitigating evidence was relevant to the factual inquiries under the special issues but had mitigating value beyond that, and that Franklin's mitigating evidence was relevant to his character only as it reflected upon his potential for future dangerousness, the factual inquiry encompassed by the second special issue. After detailing his mitigating evidence, applicant merely asserts that "[t]his mitigating evidence is precisely the kind of evidence that a capital jury is compelled to ignore or undervalue in the sentencing phase when confined to the statutory Special Issues." Thus, we consider applicant's mitigating evidence and arguments together.

Applicant sets out in his writ the mitigating evidence which came from the testimony of his sisters during the punishment phase of trial. According to his sister Margie Howard, applicant was one of twelve children in his family and was "always a good child and loving child." Applicant became deathly ill with spinal polio when he was thirteen years old, which Howard said later affected his personality and behavior.[6] Howard testified as to applicant's character and kindness toward others, specifically his parents, her children, and her nieces. As examples, Howard testified applicant took care of his father, who had cancer, by giving him baths and changing his colostomy bags "just like a nurse" and took care of her children when they were young. Howard had never seen applicant hurt anyone and stated he had never been in prison for a violent crime.

Nell Spainhour, another sister, testified regarding applicant's "family life, [ ] acts of kindness, good work, and voluntary service."[7] She too stated applicant was a loving child and was helpful with her children and her household. Applicant cared for her children while Spainhour had multiple operations and was hospitalized. She also had never seen applicant act in a violent manner and stated "he had never been charged with hurting anybody."

Justice O'Connor observed in her concurring opinion in *Franklin* that "[e]vidence of voluntary service, kindness to others, or of religious devotion *might* demonstrate positive character traits that *might* mitigate against the death penalty." 108 S.Ct. at 2333 (emphasis added). Applicant asserts this language represents examples of mitigating evidence which is irrelevant under the special issues, thus necessitating an additional jury instruction regarding mitigation. We find, however, that Justice O'Connor cited these examples of mitigating evidence as a comparison to show the

---

4. In discussing our sentencing procedure and the jury's ability to express its views regarding the appropriate punishment, Justice O'Connor observed:

   To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced *mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the* special verdict questions, *or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, the jury instructions would have provided the jury with no vehicle for expressing its 'reasoned moral response' to that evidence. (emphasis added).*

5. Justice Scalia opined that:

   Of course there remains available, in an as-applied challenge to the Texas statute, the contention that a particular mitigating circumstance is in fact irrelevant to any of the three questions it poses, and hence could not be considered. But that is not the case here, nor is it the ground upon which the Court relies.

6. Applicant was convicted of the capital murders of Homer and Nancy Howard, to whom he was related by marriage. Applicant was also 44 years old at the time of this offense. See *Baldree,* 784 S.W.2d at 681.

7. The writ record does not contain any specific details regarding this evidence other than the testimony we have laid out in this opinion.

limited probative value of Franklin's mitigating evidence of a good prison disciplinary record. That is, Franklin's good prison disciplinary record had no probative value as to his character outside of the second special issue. Justice O'Connor was speaking globally and hypothetically and, as such, did not state that if a defendant offered this type evidence he or she would be automatically *entitled* to an additional jury instruction. Justice O'Connor merely indicates this type evidence "might," in a given case, be probative beyond the scope of our second special issue.

We cannot agree with applicant that the evidence he offered in mitigation of his punishment is relevant beyond the scope of the special issues or irrelevant thereto. Whether applicant has been caring, kind, and nonviolent to others in the past is evidence reflective of his character and bears upon his propensity, or lack thereof, for committing future violent acts. We find the mitigating evidence presented by applicant is directly relevant to special issue two and no further jury instruction was needed to give effect to this evidence.

█ Because of his objection to the trial court's failure to define "deliberately," applicant also argues the first special issue precluded the jury from "considering and crediting mitigating evidence." We do not agree. Applicant's sisters testified he was kind and loving toward his family. Since applicant was convicted of killing two persons to whom he was related by marriage, his mitigating evidence went to whether he acted deliberately, and thus we find the jury could adequately consider and give effect to this evidence through the first punishment issue.

Accordingly, we hold Art. 37.071 was not unconstitutionally applied to applicant. The relief sought is denied.

CLINTON, J., joins the dissenting opinion of Judge BAIRD; he further dissents for the reasons given in his own opinions in *Boyd v. State* (Tex.Cr.App. No. 69,993, delivered May 8, 1991), *Boggess v. State* (Tex. Cr.App. No. 69,990, delivered this day), and *Lackey v. State* (Tex.Cr.App. No. 69,144, delivered this day.)

MALONEY, J., dissents.

BAIRD, Judge, dissenting.

Finding myself in disagreement with the majority of this Court, I respectfully dissent. To deny applicant relief, the majority undertakes a very narrow reading of *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); and *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). For the following reasons, I believe such an interpretation is flawed. See also *Boggess v. State* (Tex.Cr.App. No. 69,990, delivered this date) (Baird, J., dissenting); *Lackey v. State* (Tex.Cr.App. No. 69,144, delivered this date) (Baird, J., dissenting).

## I. POSITIVE CHARACTER TRAITS UNDER ART. 37.071

Applicant contends that the Texas capital sentencing scheme is unconstitutional as applied to him because his mitigating evidence "fell into two distinct categories, to-wit: (1) mitigating evidence that was not relevant to the special verdict questions, and (2) mitigating evidence and circumstances that are arguably relevant to the punishment issues but that have relevance to his moral culpability beyond the scope of the issues." *Baldree*, Op. at 216.

The majority concedes that applicant's evidence establishes both "kindness to others," Op. at 216, and "voluntary service," Op. at 216. Even though Justice O'Connor expressly mentioned those positive character traits in *Franklin*, the majority concludes that applicant is relying "upon *dicta* in Justice O'Connor's concurrence in *Franklin*, 108 S.Ct. at 2333, and Justice Scalia's dissent in *Penry*, 109 S.Ct. at 2966, to support his claim that our capital murder sentencing scheme is unconstitutional as applied to him." Op. at 216 (emphasis added). According to the majority, "Justice O'Connor was speaking *globally* and *hypothetically* and, as such, did not state that if a defendant offered this type evidence he or she would be automatically *entitled* to an additional jury instruction." Op. at 216

(emphasis added). The majority concludes: "We find the mitigating evidence presented by applicant is directly relevant to special issue two and no further jury instruction was needed to give effect to this evidence." Op. at 217. I believe this conclusion is erroneous.

## II. JUREK

Our capital sentencing scheme does not explicitly speak of mitigating circumstances; rather, it directs the jury to answer special issues. In *Jurek*, 428 U.S. 262, 96 S.Ct. 2950, the constitutionality of Tex.Code Crim.Proc.Ann. art. 37.071 "turn[ed] on whether the enumerated questions allow[ed] consideration of particularized mitigating factors." *Id.*, 428 U.S. at 272, 96 S.Ct. at 2956. The statute passed constitutional muster because of *this Court's* assurance that the special issues would be interpreted broadly enough to enable sentencing juries to *consider* all of the relevant mitigating evidence a defendant may be able to show, including a defendant's prior criminal record, age, and mental or emotional state. *Id.* at 272–273, 96 S.Ct. at 2956–2957.

After *Jurek*, the Supreme Court held that a capital sentencing scheme must not preclude the sentencer from considering any mitigating evidence, and the sentencer may not refuse to consider "as a matter of law" any mitigating evidence. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 2967, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982). Mitigating evidence is "any aspect of a defendant's character or record and any of the circumstances of the offense" that may serve as a basis for a sentence less than death. *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964–65; *Eddings*, 455 U.S. at 110, 102 S.Ct. at 874.

By 1986, "it was clear from *Lockett* and *Eddings* that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving *effect* to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigates against imposing the death penalty." *Penry*, 492 U.S. at 2946, 109 S.Ct. at 2946 (emphasis added).

## III. FRANKLIN AND PENRY

After *Jurek*, the Supreme Court did not reconsider art. 37.071 until *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) and *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. at 2947.

In *Franklin*, Justice O'Connor explained:

... [A] State may not constitutionally prevent the sentencing body from giving *effect* to evidence relevant to the defendant's background or character or the circumstances of the offense that mitigates against the death penalty. *Indeed, the right to have the sentencer consider and weigh relevant mitigating evidence would be meaningless unless the sentencer was also permitted to give effect to its consideration.*

... To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. *If,* however, *petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, or that had relevance to the defendant's moral culpability beyond the scope of the special verdict questions, the jury instructions would have provided the jury with no vehicle for expressing its "reasoned moral response" to that evidence. If this were such a case, then we would have to decide whether the jury's inability to give effect to that evidence amounted to an Eighth Amendment violation.*[1] In my view, however, this is not such a case. The only mitigating evidence introduced by petitioner was the stipulation that he had no record of disci-

---

1. This emphasized portion was specifically carried forward in *Penry,* 492 U.S. 302, 109 S.Ct. at 2948.

plinary violations while in prison. It is undisputed that the jury was free to give mitigating effect to this evidence in answering the second special verdict question regarding future dangerousness. While it is true that the jury was prevented from giving mitigating effect to the stipulation to the extent that it demonstrates positive character traits other than the ability to exist in prison without endangering jailers or fellow inmates, that limitation has *no practical or constitutional significance* in my view because the stipulation had no relevance to any other aspect of petitioner's character. . . .

The limited probative value of the stipulation regarding petitioner's lack of prison disciplinary violations is best illustrated by the contrasting examples of probative character evidence suggested by the dissent. (Citation omitted.) Evidence of *voluntary service, kindness to others,* or of religious devotion might demonstrate positive character traits that might mitigate against the death penalty. . . .

*Franklin,* 487 U.S. at 184–186, 108 S.Ct. at 2333 (O'Connor, J., joined by Blackmun, J., concurring) (emphasis added).

In *Penry,* Justice O'Connor, speaking for a majority of the Supreme Court, specifically held:

Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987) (concurring opinion). Moreover, *Eddings* makes it clear that it is not enough simply to allow the defendant to present mitigating evidence to

the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence. *Hitchcock v. Dugger,* 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). Only then can we be sure that the sentencer has treated the defendant as a "uniquely individual human being" and has made a reliable determination that death is the appropriate sentence. *Woodson* [*v. North Carolina*] 428 U.S. [280] 304, 305, 96 S.Ct. [2978] 2991, 2992, [49 L.Ed.2d 944] (1987). "Thus, the sentence imposed should reflect a reasoned moral response to the defendant's background, character, and crime." *California v. Brown,* supra, 479 U.S. at 545, 107 S.Ct. at 841 (concurring opinion) (emphasis in original).

*Id.,* 492 U.S. at 319, 109 S.Ct. at 2947. The majority concluded:

In order to ensure "reliability in the determination that death is the appropriate punishment in a specific case" *Woodson,* 428 U.S. at 305, 96 S.Ct. at 2991, the jury must be able to consider and give *effect* to a defendant's background, character, or the circumstances of the crime.

In this case, in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its "reasoned moral response" to that evidence in rendering its decision. Our reasoning in *Lockett* and *Eddings* thus compels a remand for resentencing so that we do not "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett,* 438 U.S. at 605 S.Ct. at 2965; *Eddings,* 455 U.S. at 119, 102 S.Ct. at 879 (concurring opinion). "When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Lockett,* 438 U.S. at 605, 98 S.Ct. at 2965.

*Id.,* 492 U.S. at 328, 109 S.Ct. at 2951–52.[2]

*Penry* held that our capital sentencing scheme was unconstitutional as applied because the jury was unable to express its reasoned moral response to the evidence of Penry's abusive childhood and mental retardation in determining whether death was the appropriate punishment. *Penry,* 492 U.S. at 320–22, 109 S.Ct. at 2948. Penry's mitigating evidence established that his mental retardation and organic brain damage rendered him unable to learn from experience. Additionally, when Penry was a child his mother frequently beat Penry over the head with a belt and routinely locked Penry in his room without access to a toilet for long periods of time. *Id.,* 492 U.S. at 307–09, 109 S.Ct. at 2941. Clearly, Penry's mitigating evidence had more than limited probative value in both a practical and constitutional sense.

## IV. ANALYSIS

From the opinions of this Court, it appears the majority believes that virtually all mitigating evidence can be given effect under the special issues provided by art. 37.071. Essentially, the majority perceives that a criminal defendant is entitled to a vehicle to give effect to his mitigating evidence in only two instances: 1) where there is evidence of a nexus between the offense and the mental and emotional problems of the defendant, *Gribble v. State,* 808 S.W.2d 65 (Tex.Cr.App.1990), or 2) where there is evidence that the defendant suffers from mental retardation, *Goodman v. State* (Tex.Cr.App. No. 70,887, delivered this date). I believe this narrow construction flies in the face of Supreme Court precedent.

2. Moreover, as the quoted portions of *Penry* demonstrate, Justice O'Connor's view is supported by a litany of Supreme Court death penalty jurisprudence. *Franklin* and *Penry* can be harmonized, as set forth in detail in *Boggess,* slip op. at 2–5 (Baird, J., dissenting).

3. The lead opinion in *Franklin,* authored by Justice White, garnered only four votes.

4. At first blush, simple mathematics appears to tell us that Justice O'Connor's view is shared by five members of the Supreme Court, the two Justices concurring in *Franklin* and the three

In *Franklin,* Justice O'Connor is both the author of the concurrence and the deciding vote.[3] In *Penry,* Justice O'Connor is the author of the majority opinion. While it is not clear today whether Justice O'Connor speaks for a majority of the Supreme Court, I believe *Franklin* and *Penry* should not be "case bound."[4] I fear the majority's limited interpretation of art. 37.-071 fails to fulfill the assurance we made to the Supreme Court in *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975) (Court of Criminal Appeals will broadly interpret the special issues to allow jury consideration of mitigating evidence). If we treat Justice O'Connor's comments as global and hypothetical dicta we are bound to misread the only Supreme Court cases to directly analyze our capital sentencing scheme within the past fifteen years. In short, if we do not learn from our mistakes we shall repeat them. See *Penry v. State,* 691 S.W.2d 636 (Tex.Cr.App.1985), rev'd, 492 U.S. 302, 109 S.Ct. 2934.

From *Penry* and *Franklin,* I draw the following conclusion: If a criminal defendant offers relevant mitigating evidence "not relevant to" the special issues (e.g., evidence of positive character traits) and/or "beyond the scope of" the special issues (e.g., disadvantaged background, or emotional or mental problems), and the mitigating evidence has a practical and/or constitutional significance to a criminal defendant's moral culpability, the Texas capital sentencing scheme would violate the Eighth and Fourteenth amendments unless the trial court provided the jury with a vehicle to express its reasoned moral response to the mitigating evidence.[5] See

Justices dissenting in *Franklin.* However, Justice Brennan's departure from the Court leaves us guessing as to whether this view is held by five members of the current Supreme Court.

5. This is not to say that all evidence "not relevant to" the special issues is limited to positive character traits or that all evidence "beyond the scope of" the special issues is limited to disadvantaged background or emotional or mental problems. Relevant mitigating evidence is not that easily pigeon-holed. Necessarily, relevant mitigating evidence that is "not relevant to" the

and contrast *Boyd v. State* (Tex.Cr.App. No. 69993, delivered May 8, 1991) (evidence of limited probative value amounting to nothing more than common courtesy had no practical or constitutional significance and was given full effect within the second special issue.

## V. CONCLUSION

As previously noted, the majority concedes that applicant's mitigating evidence established the positive character traits of "voluntary service" and "kindness to others." Op. at 216. A jury might believe that one who possesses such positive character traits is not "deathworthy," just as a jury might find that a defendant who suffered childhood abuse and deprivation is not deathworthy. *Lackey* dissent slip op. at 3–4 (Baird, J., dissenting), *citing Penry,* 492 U.S. at 324–26, 109 S.Ct. at 2950. Since those positive character traits may not necessarily be relevant to the special issues and, in fact, may fall beyond the scope of the special issues, applicant was entitled to have his jury provided with a vehicle to express its reasoned moral response to those positive character traits. In the absence of an appropriate instruction, a reasonable juror could well have believed that there was no vehicle for expressing the view that applicant did not deserve to be sentenced to death based upon his mitigating evidence. *Id.,* 492 U.S. at 324–26, 109 S.Ct. at 2950.

For these reasons, I believe applicant was entitled to have his jury provided with a vehicle to express its reasoned moral response to the mitigating evidence demonstrating "kindness to others" and "voluntary service." Because art. 37.071 did not provide such a vehicle, the Texas capital sentencing scheme operated in an unconstitutional manner as applied to applicant. With these comments I respectfully lodge this dissent.

special issues will also be "beyond the scope of"

