Ex parte Jewel Richard McGEE, Jr.

No. 71108.

Court of Criminal Appeals of Texas, En Banc.

Oct. 16, 1991.

Russell J. Wright, Silsbee, Woody Monica, Houston, for appellant.

R.F. "Bo" Horka, Dist. Atty., Kountze, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BENAVIDES, Judge.

This is a post conviction application for writ of habeas corpus.[1] Jewel McGee seeks to set aside his death sentence based upon the claim that the sentencing jury was not allowed to consider and give effect to mitigating evidence of his mental retardation, childhood abuse and relative youth.

On March 19, 1984, a jury found McGee guilty of the capital murder of William Crosby.[2] Thereafter the jury returned affirmative answers to the special issues[3] and punishment was assessed at death. This Court affirmed McGee's conviction and sentence on direct appeal.[4] Subsequently, the United States Supreme Court denied his petition for a writ of certiorari.[5]

McGee presents fifteen allegations in this application challenging the validity of his conviction and sentence. On July 31, 1990, this Court ordered the cause filed and set for submission on McGee's first three points. We also granted him a stay of execution pending further orders from this Court. We will now grant the requested relief.

■ In his first three points of error, McGee contends that without special instructions concerning mitigation, the statutory special issues precluded the jury from considering and giving effect to evidence offered during the punishment phase. Pri-

1. *See* Article 11.07, V.A.C.C.P.

2. V.T.C.A., Penal Code, § 19.03.

3. The trial court gave the jury gave the jury three special issues:
   1) Do you believe beyond a reasonable doubt that the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result?
   2) Do you believe beyond a reasonable doubt that there is a probability that the defendant *would commit criminal acts of violence* that would constitute a continuing threat to society?
   3) Do you believe beyond a reasonable doubt that the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased? *See* Article 37.071(b), V.A.C.C.P.

4. *McGee v. State,* 774 S.W.2d 229 (Tex.Crim.App. 1989).

5. *McGee v. Texas,* —— U.S. ——, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990).

or to the submission of the court's charge, McGee requested the following charge:

> You are instructed that you should consider all mitigating circumstances raised by the evidence in answering the special issues submitted by the court. The term "mitigating circumstances" includes but is not limited to the Defendant's lack of a history of violence, his mental, emotional or physical condition at the time of the commission of the offense; the Defendant's age and whether his conduct was the result of duress or domination by another. You may also consider any other evidence which you feel is mitigating in nature.

The trial court refused to submit McGee's requested charge.

In support of his claim, McGee relies on *Penry v. Lynaugh.*[6] In that case, the Supreme Court held that the Texas death penalty scheme failed to provide a manner by which the jury could give effect to evidence of Mr. Penry's severe childhood abuse and mental retardation. The special issues failed to provide a vehicle, which would allow the jury to express its "reasoned moral response" to mitigating evidence when it rendered its decision.[7] In remanding the case for a new sentencing hearing, Justice O'Connor, writing for the majority, described such mitigating evidence as that of a "defendant's background and character ... [supporting a] belief, long held by society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse."[8]

■ McGee claims that the special issues did not allow the jury to consider and give effect to evidence of his severe abuse as a child and his mental retardation. *Penry* teaches that although this type of evidence is relevant to the second special issue, it may be relevant only as an aggravating factor because it suggests a "yes" answer to the question of future dangerousness.[9] When presented with evidence potentially reducing a defendant's moral culpability, a jury must be allowed to evaluate that evidence. If jurors are not afforded a vehicle allowing them to consider and give effect to such mitigating evidence, the death penalty scheme as applied does not pass constitutional muster.

In *Lewis v. State,*[10] we examined a case of childhood abuse in light of the *Penry* decision. In that case, the defendant's grandmother testified that the defendant often had bruises and did not have "a happy childhood."[11] We determined that undisclosed bruises from undisclosed sources for undisclosed reasons was insufficient to raise a *bona fide* issue regarding mitigation of punishment.[12]

However, unlike *Lewis,* expert testimony in the present case described physical and emotional injuries to McGee. The record reflects that his mother abandoned him when he was four, together with eight brothers and sisters, ranging in ages fifteen to one. Prior to that time, his mother's only interest in the children was to the extent that she received a government check for the children. She used that money to support a drug habit. McGee's oldest two sisters became prostitutes to support themselves. The rest of the children were left to provide for themselves.

The State became involved with the McGee children when a six-month old child was found starved to death in the house. The McGee children were subsequently placed in several foster homes. During this time, Applicant was beaten with a broom and an extension cord, to the point where physical scars remained. Testimony from expert witnesses presented at trial

---

6. 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

7. *Id.* at 319, 109 S.Ct. at 2947.

8. *Id.* (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring)).

9. *Penry,* 492 U.S. at 323, 109 S.Ct. at 2949.

10. 815 S.W.2d 560 (Tex.Crim.App., 1991).

11. *Id.,* at 567.

12. *Id.,* at 568.

indicated that he suffered severe emotional problems as a result of the abuse.

Additionally, the record reflects that McGee was mentally retarded. He suffered trauma to the brain at birth. In addition, he scored 66 on an I.Q. test given shortly before trial. Previous test results provided similar scores and indicated that his responses were comparable to children known to have organic "milk brain" damage. The jury also heard evidence that in 1978 educators realized that McGee did not have the ability to transfer information from one learning situation to another. Just as in *Penry*, McGee's mental condition did not allow him to learn from his mistakes.

In *Lackey v. State*,[13] expert testimony indicated that the defendant was extremely slow and his academic record was exceptionally poor. We held that the special issue two provided the jury with an appropriate vehicle for evaluating Mr. Lackey's limited intellectual and mental capability.[14] We reasoned that there is not a national consensus against executing convicts with limited intellectual and mental capability. However, unlike Lackey, McGee was classified as mentally retarded.[15] Consequently, the mitigating evidence in the present case, just as in *Penry*, goes beyond the scope of the special issues.

■ The Eighth Amendment prohibits imposition of the death penalty when the jury is not permitted to express a "reasoned moral response" to potentially mitigating evidence.[16] McGee presented sufficient evidence to raise the issue that his conscience was impaired. The jury was not instructed to consider and, if necessary, give effect to this evidence. Here, we are constrained by *Penry* to hold that the Texas death penalty scheme as applied is unconstitutional because the jury was not empowered to consider and give effect to potentially mitigating evidence.

■ McGee raises additional claims under *Penry*. He contends that the punishment phase special issues prevented the jury from considering and giving effect to evidence of his relative youth. We disagree. McGee was nineteen at the time of the offense. The jury was authorized to take this factor into account in deciding the future dangerousness issue. Evidence of his age alone did not furnish a basis for the jury to conclude that he was less morally culpable than other citizens.[17] In fact, this Court recently rejected age as a *Penry* mitigating circumstance in *Lackey*.[18]

■ McGee further claims that the special issues did not permit the jury to evaluate evidence of his religious and family allegiance. We reject this contention also. This evidence tended to show that the brutality and violence in committing capital murder was an aberration from an otherwise good and non-violent character. Special issue two clearly encompasses these considerations. McGee's family and religious devotion were not circumstances of his character, which would reduce his culpability. Society does not consider those lawfully convicted of murder who have strong devotion to family and religion

13. 816 S.W.2d 392 (Tex.Crim.App., 1991) (on rehearing).

14. *Id.*, at 401.

15. A psychiatrist testified that Mr. Lackey's I.Q. was 75 at age 7, 80 at age 11, 67 at age 14, which was borderline mental retardation, and as an adult was probably in the 70–80 range. *Lackey v. State*, 816 S.W.2d 392, 395 (Tex.Crim.App., 1991) (on rehearing). In order to be considered mentally retarded, a person must score below 70 on an I.Q. test. *Penry*, 492 U.S. at 308 n. 1, 109 S.Ct. at 2941 n. 1 (citing Ellis and Luckasson, *Mentally Retarded Criminal Defendants*, 53 Geo.Wash.L.Rev. 414, 423 (1985)).

16. *Penry*, 492 U.S. at 302, 109 S.Ct. at 2934.

17. Applicant cited *Graham v. Collins*, 896 F.2d 893 (5th Cir.1990) (panel op.), *reh'g granted*, 903 F.2d 1014 (5th Cir.1990), for the proposition that youth was a *mitigating circumstance* under *Penry*. However, Graham, unlike McGee, was a minor at the time of the offense. More significantly, the 5th Circuit panel opinion was in effect vacated by the decision of the court to rehear the case *en banc*. *See* Internal Operating Procedures, Rule 35, Rules of the United States Court of Appeals for the Fifth Circuit.

18. 816 S.W.2d 392 (Tex.Crim.App., 1991) (on rehearing).

less blameworthy.[19] Other than its relevance to special issue two, this evidence could only have elicited a sympathetic response, which is not constitutionally necessary.[20] The eighth amendment does not require a specialized instruction where a defendant introduces evidence relevant to the special issues and fails to demonstrate a reduced personal culpability for the commission of the offense.[21]

Because the jury was not allowed to consider McGee's mitigating evidence of mental retardation and an abusive childhood as required by the Supreme Court's holding in *Penry v. Lynaugh,* we set aside the conviction and remand for a new trial.

Adhering to their respective views regarding youthful age, religious devotion and other positive traits of character, CLINTON and MALONEY, JJ., join the judgment of the Court.

BAIRD, Judge, concurring.

I concur with that portion of the majority opinion concluding the Texas death penalty scheme was unconstitutional as applied to applicant because the jury was not empowered to consider and give effect to applicant's mental retardation and abusive background. Op. at 80. Had the majority opinion stopped at that point, there would be no need for this concurrence. However, the majority elected to address the merits of applicant's additional claims. Op. at 80.

Additionally, applicant contended that the jury was prevented from considering and giving effect to his "relative youth" and his "religious and family allegiance" thereby causing the Texas death penalty scheme to operate in an unconstitutional manner as applied to him. There is no need for the majority to address applicant's final two contentions as they are unnecessary to the disposition of this case. Therefore, I believe the majority's resolution of those two claims to be purely dicta, adding

nothing to the jurisprudence of this State. *See, Gordon v. State,* 801 S.W.2d 899, 917 (Tex.Cr.App.1990) (Baird, J., concurring).

With these comments, I concur in the result reached by the majority.

19. *See Richardson v. State,* 1991 WL 99949 (Tex. Crim.App., No. 68,934, July 12, 1991) (Benavides, J., concurring).

20. *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 1262–63, 108 L.Ed.2d 415 (1990).

21. *Baldree v. State,* 810 S.W.2d 213 (Tex.Crim. App.1991) (citing *Franklin v. Lynaugh,* 487 U.S. 164, 185, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (O'Connor, J., concurring)).