**Ex parte Lester Leroy BOWER, Jr.**

**No. 70995 to 70998.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 4, 1991.

Rehearing Denied Jan. 29, 1992.

ington, D.C., Eden Harrington, Austin, for Lester Leroy Bower.

Robert Jarvis, C.A., Sherman, Robert Walt, Asst. Atty. Gen., Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BENAVIDES, Judge.

This is a post-conviction application for writ of habeas corpus.[1] Lester Bower seeks to set aside his death sentence based on the claim that the sentencing jury was not allowed to consider and give effect to mitigating evidence of his good character, good deeds and lack of a criminal record. We will deny the requested relief.

On October 8, 1983, four men were murdered in a hangar near Sherman. Bobby Glen Tate, owner of the hangar and one of the victims, told his family that he was attempting to sell his ultralight aircraft. Tate and three others intended to meet a potential buyer at the hangar that afternoon. Telephone records indicated that Lester Bower spoke to one of the victims three times to set up a meeting. Bower had responded to an advertisement placed in Glider Rider, a magazine for ultralight enthusiasts. A search of his home produced various ultralight equipment, including two ultralight tires with Tate's name scratched on them. Police also discovered blood stained boots and a blood stained nylon bag. These discoveries led to Bower's arrest and subsequent indictments, which charged him with the capital murders of Tate and the three other victims. A jury convicted Lester Bower of four capital murders. The jury affirmatively answered the statutory special issues and punishment in each case was assessed at death. The convictions were affirmed on direct appeal.[2] 769 S.W.2d 887.

In the instant habeas corpus proceeding, Bower claims that his death sentences are unconstitutional because the capital sen-

---

1. *See* Article 11.07, V.A.C.C.P.

2. *Bower v. State,* 769 S.W.2d 887 (Tex.Crim. App.), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989).

tencing statute[3] prevented the jury from fully considering and giving effect to mitigating evidence presented at trial. His claim is based on the Supreme Court's opinion in *Penry v. Lynaugh*.[4] *Penry* held the Texas capital punishment scheme unconstitutional as applied because the jury could not express its reasoned moral response to potentially mitigating evidence.[5] In *Penry*, the defendant introduced evidence that he suffered from childhood abuse and mental retardation, which rendered him unable to learn from his mistakes.[6] Justice O'Connor reasoned that the mitigating evidence was relevant beyond the scope of the special issues. The eighth amendment prohibits imposition of the death penalty by a sentencer not allowed to impose, based on proper mitigating evidence, a less severe punishment.

Bower did not, by way of pretrial motion or trial objection, challenge the Texas capital sentencing scheme on any of the grounds alleged in this application for post conviction habeas corpus relief. However, this Court recently held that a specially requested charge or a trial objection was not required to raise a *Penry* challenge on appeal for cases tried before the *Penry* decision.[7] At the time of Bower's trial, a *Penry* claim was a "right not recognized" by this Court or by the Supreme Court.

■ Under the capital sentencing statute, a defendant may ask the jury to "consider whatever evidence of mitigating circumstances the defense can bring before it."[8] A jury considers this mitigating evidence and answers the issues under the capital sentencing statute. Yet, where evidence of a defendant's background, character, or circumstances of the offense has relevance to constitutionally mandated sentencing considerations beyond the scope of the special issues, the trial court must provide instructions which allow the jury to consider and give effect to this evidence.

■ We have reviewed the evidence presented at trial which Bower claims warrant a mitigating instruction.[9] At the punishment phase of trial, Bower introduced evidence of his good and non-violent character, his good deeds, and the absence of a prior criminal record. Bower presented this evidence to convince the jury that he would not be a future threat to society. Even without a specific instruction, evidence of his non-violent nature and lack of a criminal record was plainly relevant to the future dangerousness special issue as a mitigating factor. Mitigating evidence under *Penry* encompasses those circumstances of "the defendant's background supporting a belief, long held by society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse."[10]

Unlike the mitigating evidence presented in *Penry*, Bower's positive character evidence did not reflect that he was less morally culpable for committing the four capital murders than the average citizen.[11] If the jurors believed the character witnesses, they could have considered its mitigating effect in its determination of the special issue regarding future dangerousness.

3. TEX.CRIM.PROC.CODE ANN. art. 37.071 (Vernon 1990).

4. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

5. *Id.* 492 U.S. at 319, 109 S.Ct. at 2947.

6. *Id.*

7. *Black v. State*, 816 S.W.2d 350 (Tex.Crim.App. 1991) (Campbell, J., concurring) (joined by McCormick, P.J., Clinton, Overstreet, Maloney, and Benavides, JJ).

8. *Quinones v. State*, 592 S.W.2d 933, 947 (Tex. Crim.App.), cert. denied, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

9. In his writ application, Bower developed additional testimony, which he claims has mitigating effect. However, we granted this writ to determine whether a *Penry* instruction was necessary in light of the evidence presented *at trial*. We have only considered the evidence that the jury heard.

10. *Penry*, 109 S.Ct. at 2947 (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring).

11. *See Ex parte Baldree*, 810 S.W.2d 213 (Tex. Crim.App.1991).

Nevertheless, the jury concluded that Bower would be a continuing threat to society and answered the second special issue in the affirmative.

Bower attempted to show through his devotion to family, friends and his religion that violence was inconsistent with his peaceful character. The second special issue clearly encompasses considerations such as these. Bower's love for family and friends and his religious devotion were not circumstances of his character which contributed to the four murders. Moreover, we perceive no long held belief by the American people that those lawfully convicted of murder who have strong devotion to family, friends and religion are less culpable or blameworthy than those who murder and have no such excuse.[12] Therefore, the statutory special issues provided an adequate vehicle for the jury's consideration of his mitigating evidence and no instruction regarding the evidence was necessary.

Accordingly, we deny the requested relief.[13]

MILLER and MALONEY, JJ., concur in the result.

BAIRD, Judge, concurring.

I adhere to my position as stated in *Ex parte Baldree*, 810 S.W.2d 213 (Tex.Cr. App.1991) (Baird, J., dissenting):

> From *Penry* and *Franklin* [*v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155][ (1988) ], I draw the following conclusion: If a criminal defendant offers relevant mitigating evidence 'not relevant to' the special issues (e.g., evidence of positive character traits) and/or "beyond the scope of" the special issues (e.g., disadvantaged background, or emotional or mental problems), and the mitigating evidence has a practical and/or constitutional significance to a criminal defendant's moral culpability, the Texas capital sentencing scheme would violate

of the Eighth and Fourteenth amendments unless the trial court provided the jury with a vehicle to express its reasoned moral response to the mitigating evidence.

*Baldree*, 810 S.W.2d at 220.

However, unless the United States Supreme Court agrees to consider this Court's interpretation of *Penry* and *Franklin*, I am in the minority. *See, Black v. State*, 816 S.W.2d 350, 374 (Tex.Cr.App. 1991) (Baird, J., dissenting); *Boggess v. State*, 1991 WL 87597 (Tex.Cr.App. No. 69,990, delivered May 29, 1991) (Baird, J., dissenting); *Lackey v. State*, 816 S.W.2d 392, 405 (Tex.Cr.App.1991) (opinion on reh'g) (Baird, J., dissenting); and *Baldree*, supra.[1]

The doctrine of stare decisis provides the framework for the orderly administration of justice. In my view, regardless of how strongly a judge personally feels about the correctness of his/her position, if that position fails to garner a majority of the court, he/she should adopt the view held by the majority. Therefore, while I maintain my personal belief that this Court is construing *Penry* much too narrowly, under the doctrine of stare decisis I am constrained to concur in the result reached today by the majority.

OVERSTREET, Judge, concurring.

This Court's recent series of opinions regarding mitigating evidence dictates that on a case by case examination said evidence may or may not rise to the level that causes it to be beyond the scope of the special issues of the Texas capital murder sentencing scheme. I remain with the majority on this view. This opinion correctly analyzes the evidence admitted and correctly concludes that the statutory special issues provided an adequate vehicle for the jury's consideration of mitigating evidence in the appellant's case and no special instruction regarding the evidence was neces-

---

12. *See Richardson v. State*, 1991 WL 99949 (Tex. Crim.App., No. 68,934, June 12, 1991) (Benavides, J., concurring).

13. Applicant's remaining allegations are denied on the basis of the trial court's findings of fact and conclusions of law.

1. See also, *Earhart v. State*, 823 S.W.2d 607, 632–33, n. 9, n. 10 (Tex.Cr.App.1991); *Mooney v. State*, 817 S.W.2d 693, 706, n. 18 (Tex.Cr.App. 1991).

sary. The opinion in my view goes beyond permissible bounds when it concludes that "Moreover, we perceive no long held belief by the American people that those lawfully convicted of murder who have strong devotion to family, friends and religion are less culpable or blameworthy than those who murder and have no such excuse [footnote omitted]." Since I am unwilling to concede that I share that perception, I disavow said language and concur in the result only.

CLINTON, Judge, dissenting.
"But *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable...."

1. The full metaphoric passage crafted by Justice Musmanno for the Pennsylvania Supreme Court reads:
    "*Stare Decisis* channels the law. It erects lighthouses and flys the signals of safety. The ship of jurisprudence must follow that well-defined channel which over the years, has been proved to be secure and trustworthy. But it would not comport with wisdom to insist that, should shoals rise in a heretofore safe course and rocks emerge to encumber the passage, the ship should nonetheless pursue the original course, merely because it presented no hazard in the past. The principle of *stare decisis* does not demand that we follow precedents which shipwreck justice."
    *Id.*, 208 A.2d at 205. Later, changing the methaphor, he added:
    "There is nothing in the records of the courts, the biographies of great jurists, or the writings of eminent legal authorities which offers the slightest encouragement to the notion that time petrifies into unchanging jurisprudence a palpable fallacy. As years can give no sturdiness to a decayed tree, so the passing of decades can add no convincing flavor to the withered apple of sophistry clinging to the limb of demonstrated wrong."
    *Id.*, 208 A.2d at 206. (All emphasis throughout is mine unless otherwise noted.)

2. The Cruel and Unusual Punishments Clause "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, at 101, 78 S.Ct. 590, at 598, 2 L.Ed.2d 630, at 642 (1958). Contrary to the apparent position of some members of the bench and bar, the decision of Supreme Court in *Penry* is not *sui generis*.
    "[T]he concept of individualized sentencing in criminal cases" gained wide acceptance in this country long before *Furman v. Georgia, et al.,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), held unconstitutional imposition of and

*Helvering v. Hallock,* 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940).

"The principle of *stare decisis* does not demand that we follow precedents which *shipwreck justice."*

*Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193, 205 (Pa.1965).[1]

Today, justice is foundering in a Sargasso sea of opinions by members of this Court interpreting *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).[2]

For example, in this cause, upon reading the ubiquitous passage in *California v. Brown,* the majority would have it mean:

carrying out the death penalty under statutory schemes implicated in those cases, including our own *Branch v. State,* 447 S.W.2d 932 (Tex. Cr.App.1969). *Lockett v. Ohio,* 438 U.S. 586, at 602–604, 98 S.Ct. 2954, at 2963–2964, 57 L.Ed.2d 973, at 988–989 (1978). For a synthesis of the separate opinions in *Furman v. Georgia,* see *Jurek v. State,* 522 S.W.2d 934, at 937 (Tex.Cr. App.1975) (three concurring justices condemned "arbitrary, capricious and standardless manner [of imposition]").
    Various legislative responses to *Furman* were examined four years later in five cases, including *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App. 1975), and a joint opinion in each upheld constitutionality of statutes in three while holding two unconstitutional. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts (Stanislaus) v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Collectively those opinions stand for the proposition pertinent here, *viz:*
    ".... [T]he sentencing process must permit consideration of the '*character and record of the individual offender and the circumstances of the offense* as a constitutionally indispensable part of the process in inflicting the penalty of death,' *Woodson v. North Carolina,* 428 U.S., at 304, 96 S.Ct., at 2991, 49 L.Ed.2d, at 961, in order to ensure the reliability, under Eighth Amendment standards, of the determination that 'death is the appropriate punishment in a specific case.' *Id.,* at 305, 96 S.Ct., at 2991, 49 L.Ed.2d, at 961; see *Roberts (Harry) v. Louisiana,* 431 U.S. 633, 637, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637, 642 (1977); *Jurek v. Texas,* 428 U.S. 262, 271–272, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929, 938 (1976)."
    *Lockett v. Ohio,* supra, 438 U.S. at 601, 98 S.Ct., at 2963, 57 L.Ed.2d, at 988.

"Mitigating evidence under *Penry* encompasses those circumstances of 'the defendant's background supporting a belief, long held by society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse.' "

Opinion, at 287. That in turn seems to be but a paraphrase of a similar reading of the same passage, in *Ex parte McGee*, 817 S.W.2d 77 (Tex.Cr.App.1991), *viz:*

> While *Woodson* held the mandatory death penalty invalid "because it permitted *no* consideration of 'relevant facets of the character and record of the individual offender or the circumstances of the offense,'" it did not attempt to indicate "*which facets* of an offender or his offense it deemed 'relevant' in capital sentencing or *what degree* of consideration of 'relevant facets' it would require." *Lockett*, at 604, 90 S.Ct., at 2964, 57 L.Ed.2d, at 989–990 (first emphasis in original). Accordingly, the Supreme Court made that effort and concluded:
>
>> "that the sentencer ... not be precluded from considering *as a mitigating factor, any aspect* of a defendant's character or record and *any* of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," *id.*, at 604, 98 S.Ct., at 2964–2965, 57 L.Ed.2d, at 990, and be able to give "*independent mitigating weight* to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation[,]" *id.*, at 605, 98 S.Ct., at 2965, 57 L.Ed.2d, at 990 (first emphasis in original).
>
> Because it found "[t]he limited range of mitigating factors which may be considered by the sentencer under the Ohio statute is incompatible with the Eighth and Fourteenth Amendments," the Supreme Court reversed the judgment to the extent of imposition of the death penalty. *Lockett, id.*, at 608–609, 98 S.Ct., at 2967, 57 L.Ed.2d at 992. It did the same, and also for like limitations, in *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978) (habitual drug use, emotional instability and youth—age 16). See also *Burns v. State*, 761 S.W.2d 353, at 357–358 (Tex. Cr.App.1988).
>
> On a similar review the Supreme Court determined in *Penry* what he was seeking is not a "new rule" nor relief which "imposes a new obligation" on this State, *viz:*
>
>> "Thus, at the time Penry's conviction became final, it was clear from *Lockett* and *Eddings* [*v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1] [ (1982) ] that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense which mitigates against imposition of

" ... Justice O'Connor, writing for the majority, described mitigating evidence as that of a 'defendant's background and character ... [supporting a] belief, long held by society, that defendants who commit criminal acts that are attributable to [such circumstances] may be less culpable than defendants who have no such excuse.' "

*Id.*, 817 S.W.2d at 79.[3]

In the *Penry* context also, Justice O'Connor wrote:

> the death penalty. Moreover, the facial validity of the Texas Death penalty statute had been upheld in *Jurek* on the basis of assurances that the special issues would be interpreted broadly enough to enable sentencing juries to consider all of the relevant mitigating evidence a defendant might present. Penry argues that those assurances were not fulfilled *in his particular case* ...."
>
> *Id.*, 492 U.S. at 308, 109 S.Ct., at 2946–2947, 106 L.Ed.2d, at 278.
>
> Of course, precisely because the Supreme Court found such assurances were not accomplished, it went on to apply the principle underlying *Lockett* and *Eddings* specifically to mitigating evidence of mental retardation and abused childhood offered by Penry as a basis for sentence less than death. So, to construe *Penry* in a vacuum, in isolation from the principle at work, not only is likely to lead to an erroneous conclusion but also, in light of past experience, expose the Court to the risk of another round of reversals and remands.

3. Compare what Justice O'Connor actually wrote in *California v. Brown*, in which mitigating evidence portrayed the factors underscored in the first sentence below, *viz:*

> "In my view, evidence about the defendant's background and character is relevant because of the belief, long held by society, that defendants who commit criminal acts that are attributable to *a disadvantaged background, or to emotional and mental problems,* may be less culpable than defendants who have no such excuse. This emphasis on culpability in sentencing decisions has long been reflected in Anglo–American jurisprudence. As this Court observed in *Eddings*, the common law has struggled with the problem of developing a capital punishment system that is 'sensible to the uniqueness of the individual.' [citation omitted]. *Lockett* and *Eddings* reflect the belief that punishment should be directly related to the personal culpability of the criminal defendant. Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime rather than mere sympathy or emotion. [last emphasis in original].

"Underlying *Lockett* and *Eddings* is the principle that punishment should be directly related to the personal culpability of the criminal defendant. If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, 'evidence about the defendant's background and character is relevant because of the belief, long held by society, that defendants who commit criminal acts that are attributable to *a disadvantaged background, or to emotional and mental problems,* may be less culpable than defendants who have no such excuse.' *California v. Brown,* 479 U.S. 538, 545 [107 S.Ct. 837, 841, 93 L.Ed.2d 934] (1987) (concurring opinion).... Only [when the sentencer is able to consider and give effect to mitigating evidence] can we say that the sentencer has treated the defendant as a 'uniquely individual human bein[g]' and has made a reliable determination that death is the appropriate sentence. *Woodson,* 428 U.S., at 304, 305 [96 S.Ct., at 2991]. 'Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime.' *California v. Brown, supra,* [479 U.S.] at 545 [107 S.Ct. at 841] (concurring opinion) ([last] emphasis in original)."

*Id.,* 492 U.S. at 319, 109 S.Ct., at 2947, 106 L.Ed.2d, at 278.[4]

Because the *individualized assessment* of the appropriateness of the death penalty *is a moral inquiry into the culpability of the defendant,* and not an emotional response to the mitigating evidence, \* \* \* \* the jury instructions—taken as a whole—*must clearly inform the jury that they are to consider* any relevant mitigating evidence about defendant's background and character, or about the circumstances of the crime. As Justice BRENNAN's dissent illustrates, however, at least one difficulty with attempts to *remove emotion* from capital sentencing through instructions such as those at issue in this case is that *juries may be misled into believing that mitigating evidence about a defendant's background or character also must be ignored."* *Id.,* 479 U.S., at 545–546, 107 S.Ct., at 841, 93 L.Ed.2d, at 942. Patently, Justice O'Connor was addressing particular items of mitigating evidence shown by *Brown* from the standpoint of a broader context of a general moral inquiry into culpability of any defendant based on mitigating evidence about his background and character, or circumstances of the offense—that is, culpability in every case is not to be determined solely on whether defendant suffered "a disadvantaged background or emotional and mental problems." "Sensib[ility] to the uniqueness of the individual" certainly embraces whatever mitigating factors pertaining to culpability of a given defendant may reasonably evoke considerations of fairness and mercy. *Penry,* 492 U.S. at 327–328, 109 S.Ct., at 2951, 106 L.Ed.2d, at 283–284.

4. Shortly after coming to the Supreme Court Justice O'Connor demonstrated her understanding of *Lockett v. Ohio, supra,* in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The mitigating evidence included testimony that sixteen year old Eddings suffered a "troubled youth" and was "emotionally disturbed in general and at the time of the crime," *id.,* at 107, 102 S.Ct., at 872–873, 71 L.Ed.2d, at 6. The trial judge believed the law precluded his considering that evidence; the Oklahoma Court of Criminal Appeals found that "family history is useful in explaining why he behaved the way he did, but it does not *excuse* his behavior." *Id.,* at 109–110, 102 S.Ct., at 873–874, 71 L.Ed.2d, at 8. Justice O'Connor wrote separately "to address more fully why this case must be remanded in light of *Lockett* ... [for] the trial court to consider and weigh all of the mitigating evidence concerning [his] family background and personal history." *Id.,* at 117, 102 S.Ct., at 878, 71 L.Ed.2d, at 12. She pointed out that *Lockett* insisted the sentencer be permitted to consider as a mitigating factor "any aspect of defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death," thus compelling a remand rather than "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Id.,* at 118–119, 102 S.Ct., at 878–879, 71 L.Ed.2d, at 13.

In *California v. Brown, supra,* defendant presented extensive testimony in two categories, *viz:* one, from lay witnesses and a psychologist to the effect that he "possessed a gentle and nonviolent nature disturbed only by severe psychosexual problems resulting from a difficult childhood;" second, from friends and relatives indicating "affection for him." 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934; see 479 U.S., at 539, 107 S.Ct., at 838, 93 L.Ed.2d, at 938–939 (psychiatric testimony that defendant killed victim "because of his shame and fear over sexual dysfunction;" other witnesses "recounted [his] peaceful nature"); *id.,* at 560, 107 S.Ct., at 849, 93 L.Ed.2d, at 952 (Brennan, J., dissenting) ("defendant literally stakes his life on ... evidence of his psychological problems and harsh family background);" see also *California v. Brown,* 40 Cal.3d 512, 220 Cal.Rptr. 637, 709 P.2d 440, 453 (1985).

Manifestly, the first category is the evidence to which Justice O'Connor alluded in her formu-

By bracketing "such circumstances" in place of "disadvantaged background, or to emotional and mental problems" the majority in this cause and *Ex parte McGee*, supra, is suggesting that the Supreme Court means mitigating evidence is limited to that which shows "background and character" so adverse and negative in nature as to amount to an "excuse" for committing criminal acts. Opinion, at 286–287; *McGee*, supra, 817 S.W.2d at 80. Accordingly, the majority is unwilling to accept that an impeccable background and positive traits of character bear on personal or moral culpability for committing murder; it cannot believe such attributes make a person "less culpable or blameworthy than those who murder and have no such excuse," rather they merely tend to indicate "an aberration from an otherwise good and non-violent character;" so jurors "could have considered its mitigating effect" in answering the second special issue. Opinion, at 286–287; *McGee*, supra, 817 S.W.2d at 80.

Of course, the majority does not cite any external authority for its notions, and certainly they are inconsistent with dissenting and concurring views on this point in *Franklin*, see *ante*, n. 4, at 291. They are also at odds with the concept of individualized sentencing in criminal cases generally accepted in this country and this state,

taking into account all mitigating and aggravated circumstances. See *Lockett v. Ohio*, 438 U.S., at 602–604, 98 S.Ct., at 2963–2964, 57 L.Ed.2d, at 988–989 (possession of fullest information possible concerning life and characteristics of defendant highly relevant, if not essential, to determining appropriate sentence); Article 37.-07, § 3(a), V.A.C.C.P. (evidence may be offered as to any matter court deems relevant to sentencing, including prior criminal record, general reputation and character).

"Mitigation" means "Alleviation; abatement or diminution of a penalty or punishment imposed by law." Black's Law Dictionary (Rev.Fourth Ed.) 1153. What constitutes "mitigating circumstances" is commonly accepted hornbook law, *viz:*

> "Such [circumstances] as do not constitute a justification or excuse of the offense in question, but which, *in fairness and mercy*, may be considered as extenuating or reducing the degree of *moral culpability*."

*Ibid.* The Court has recognized this principle is "one of the fundamental traditions of our system of jurisprudence." [5]

One purpose of our penal code is "to deal with conduct that unjustifiably and inexcusably causes or threatens harm to those individual or public interests for which

---

lation of an accused with "a disadvantaged background or [ ] emotional and mental problems" being less culpable than defendants "who have no such excuse." She made no mention of positive character traits.

Concurring in *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), however, Justice O'Connor agreed with the dissenters concerning "examples of probative evidence," i.e., "voluntary service, kindness to others, or of religious devotion might demonstrate positive character traits that might mitigate against the death penalty." *Id.*, at 186, 108 S.Ct., at 2333, 101 L.Ed.2d, at 173. Together, those justices concurring and dissenting then constituted a majority of the Supreme Court. See *Boyd v. State*, 811 S.W.2d 105 (Tex.Cr.App.1991) (Clinton, J., dissenting).

Positive character traits mitigate against the penalty in the sense of extenuating or reducing the degree of *moral* culpability, not to "excuse" *legal* culpability for committing those acts constituting the offense. Thus "background and character *unrelated to [the] crime* should be considered by the sentencer[.]" *Boyde v. Cali-*

*fornia*, 494 U.S. 370, at 399, 110 S.Ct. 1190, at 1208, 108 L.Ed.2d 316, at 341 (1990) (Marshall, J., dissenting, citing *Penry*, supra).

5. In *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App. 1975), the late Judge Morrison so wisely observed in this regard, *viz:*

> "Some discretion is inherent and desirable in any system of justice, from arrest to final judgment. * * * * To eliminate all discretion on the part of the jury would be to risk elimination of that valuable element which permits *individualization based on consideration of all extenuating circumstances* and would eliminate the element of *mercy*, one of the fundamental traditions of our system of criminal jurisprudence."

*Id.*, at 940 (notes citing law review articles omitted). See also *Stewart v. State*, 686 S.W.2d 118 (1984) (Clinton, J., dissenting at 126: Court should provide for jury consideration—independent of narrow special issues—of whatever mitigating circumstances are adduced to decide whether "mercy" is appropriate).

state protection is appropriate." V.T.C.A. Penal Code, § 1.02. One of the purposes of capital punishment is retribution, and as Justice O'Connor has written for the Supreme Court, "[t]he heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender." *Tison v. Arizona*, 481 U.S. 137, at 149, 107 S.Ct. 1676, 1683, 95 L.Ed.2d 127, at 139 (1987) (delivered three months after *California v. Brown*, supra). "While the States generally have wide discretion in deciding how much retribution to exact in a given case, the death penalty ... requires the State to inquire into the relevant facets of 'the character and record of the individual offender,'" citing *Woodson v. North Carolina*, supra, 428 U.S. at 304, 96 S.Ct., at 2991, 49 L.Ed.2d, at 961. *Ibid.*

*Lockett* itself demonstrates the concept of individualized sentencing in criminal cases, including consideration of mitigating factors and dispensation of mercy, is virtually unrestrictive and broadly applicable. *Id.*, 438 U.S. at 602–606, 98 S.Ct., at 2963–2965, 57 L.Ed.2d, at 988–991 (mitigating factor is *any* aspect of character or record and *any* circumstance of offense proffered as basis for sentence less than death; mercy dispensed on basis of intangible factors). See also *Burns v. State*, 761 S.W.2d 353, at 357–358 (Tex.Cr.App.1988). As Justice O'Connor discerned in *Penry:* "[T]here is no constitutional infirmity in a procedure that allows a jury to recommend mercy based on the mitigating evidence introduced by a defendant," *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); " '[T]he Constitution limits a State's ability to narrow the sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence.' (emphasis in original)." *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1986). Accordingly, for the Court, Justice O'Connor concluded:

"... Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or

record or the circumstances of the offense. Rather than creating the risk of an unguided emotional response, full consideration of evidence that mitigates against the death penalty is essential if the jury is to give a ' "reasoned *moral* response to the defendant's background, character, and crime." ' [citations omitted]."

*Id.*, 492 U.S. at 327, 109 S.Ct., at 2951, 106 L.Ed.2d, at 284.

Personal culpability is thus a matter of consequence to the determination of capital punishment, and its components include all aspects of character, background, record and circumstances of the offense. That determination of personal culpability presupposes a finding of *legal* culpability for the offense, and thus requires that there be separately taken into account the circumstances of the offense "together with the character and propensities of the offender." *Pennsylvania ex rel Sullivan v. Ashe*, 302 U.S. 51, at 55, 58 S.Ct. 59, at 61, 82 L.Ed. 43, at 46 (1937). Guilt of a capital offense having been found, "the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, at 304, 96 S.Ct. 2978, at 2991, 49 L.Ed.2d 944, at 961. Sentencer must be allowed to give *"independent weight* to aspects of the defendant's character and record and to circumstances of the offense." *Lockett*, supra, 438 U.S. at 605, 98 S.Ct., at 2965, 57 L.Ed. 2d, at 990.

The Supreme Court has not defined character generally and has rarely undertaken to delineate and apply relevant traits of character in a capital case. *Boyd v. State*, 811 S.W.2d 105 (Tex.Cr.App.1991) (Clinton, J., dissenting, Opinion at 289, n. 3); but see *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (disposition to make well-behaved and peaceful adjustment to prison life is relevant aspect of character). The majority view gleaned

from the dissenting and concurring opinions in *Franklin,* however, is that probative character evidence of positive traits of character "might" mitigate against the death penalty; the dissenters were satisfied it does, in that past conduct often provides insights into a person's character that "will evoke a merciful response to a demand for the ultimate punishment even though it may shed no light on what may happen in the future," or if it might, still evidence of one's usual qualities or traits "has as much relevance to culpability as to future dangerousness." *Boyd v. State,* supra, dissenting Opinion at 290, 291, n. 4, (excerpting *Franklin* ).

In *noncapital* cases those considerations of public policy enacted into statutes that account for wide acceptance of individualization of sentences "cannot be thought less important in *capital* cases;" indeed, "[t]he need for treating each defendant with that degree of respect due to the uniqueness of the individual is *far more important than in noncapital cases." Lockett,* supra, 438 U.S. at 605, 98 S.Ct., at 2965, 57 L.Ed.2d, at 990.

The courts in this jurisdiction have dealt extensively with character evidence in *noncapital* cases, first under of the common law and then in light of legislative policy determinations reflected in enactments from suspended sentence laws through adult probation acts and bifurcation into two stages of most criminal trials before a jury on a plea of not guilty. See *Murphy v. State,* 777 S.W.2d 44, at 59–62 (Tex.Cr. App.1989). That they came to strikingly similar conclusions about character evidence as the *Franklin* majority did is, therefore, instructive regarding the function of character evidence in our own scheme for assessing punishment in capital cases.[6]

Drawing on the concurring opinion in *Franklin, Penry* contemplates that miti-

---

**6.** Because it was "everywhere agreed that ... moral character has probative value in determining [an actor's] probable conduct," *on the issue of guilt* an accused may introduce evidence of good character directly related to the pertinent trait "to show that it is improbable that he did the act charged;" in rebuttal the prosecution may seek to show it is bad in the same respect. Ray, Texas Law of Evidence § 1492 (Third Ed. 1980), 2 Texas Practice 169–172.

In unitary trials such testimony, particularly for being a peaceable and law abiding citizen, must be founded on reputation known prior to trial, *Graham v. State,* 29 Tex.App. 31, 13 S.W. 1013, at 1014 (1890), except where an issue of suspended sentence is in the case, *Rosamond v. State,* 97 Tex.Cr.R. 569, 263 S.W. 297, at 299 (1924), in which event the test is "present reputation," *Smith v. State,* 94 Tex.Cr.R. 633, 252 S.W. 562 (1923). See generally *Hamman v. State,* 166 Tex.Crim. 349, 314 S.W.2d 301, at 303–305 (Tex.Cr.App.1958), and *Murphy v. State,* supra, at 58–60.

With advent of bifurcated trials under Article 37.07, V.A.C.C.P., altered rationales and modified procedures drew brighter lines of demarcation *vis a vis* "general reputation and character." For example, *at the guilt stage* while an accused may still offer evidence of good character to show improbability of doing the act charged, he may not seek to establish that he had never been convicted of a felony to show his good character; on the other hand, *at punishment* proof of the latter as well as testimony of witnesses concerning reputation for being a peaceable and law abiding citizen is "not only admissible but was proof required on the issue of proper punishment to be assessed[.]" *Smith v. State,* 414 S.W.2d 659, 661–662 (Tex.Cr.App. 1967). The Court reasoned: "To hold otherwise would destroy the beneficial effect of the statute for a separate hearing on the issue of punishment[.]" *Id.,* at 662. See also *Brumfield v. State,* 445 S.W.2d 732, at 738 (Tex.Cr.App.1969) (statute "allowed evidence critical to an *enlightened* determination of punishment," avoiding possibility of prejudice on issue of guilt); *Murphy v. State,* supra, at 61.

Furthermore, in *Allaben v. State,* 418 S.W.2d 517 (Tex.Cr.App.1967), the Court recognized the more comprehensive nature and wider dimensions of a punishment hearing when it held that in addition to matters specified in Article 37.07, supra, "[e]vidence legally admissible to *mitigate* punishment ... is also admissible." *Id.,* at 519. Moreover, we have said, "The jury is concerned with evaluating a defendant's character and background *independent* of the commission of the crime on trial." *Sparkman v. State,* 580 S.W.2d 358, at 360 (Tex.Cr.App.1979). Since *Allaben* the Court has recognized "that other circumstances [of the offender], such as ... *family background, religious affiliation, education, employment history* and the like, are appropriate considerations in assessment of punishment. [citations omitted]." *Murphy v. State,* supra, at 64. "The like" includes other traits of character such as accountability, caring, diligence, fairness, fidelity, honesty, integrity, respect, responsibility and trustworthiness.

Under *Lockett* and progeny including *Penry,* if appropriate in an ordinary case, how "far more important" such circumstances become in capital cases.

gating evidence may or may not be relevant to or beyond one or more of the special issues, *viz:*

"... To the extent that the mitigating evidence introduced by petitioner was relevant to one of the special verdict questions, the jury was free to give effect to that evidence by returning a negative answer to that question. If, however, petitioner had introduced mitigating evidence about his background or character or the circumstances of the crime that was not relevant to the special verdict questions, or that had relevance to the *defendant's moral culpability beyond the scope of the special verdict questions,* the jury instructions would have provided the jury with no vehicle for expressing its 'reasoned moral response' to that evidence."

*Franklin,* 487 U.S. at 185, 108 S.Ct., 2333, 101 L.Ed.2d, at 173; *Penry,* 492 U.S. at 321, 109 S.Ct., at 2948, 106 L.Ed.2d, at 230.

So far, however, a majority of this Court has dismissed the majority view in *Franklin,* with a variety of rationalizations, and takes the position that evidence of favorable background and positive character traits may be considered in mitigation *only* in answering the second special issue. See, e.g., *Ex Parte Baldree* 810 S.W.2d 213 (Tex.Cr.App.1991) ("Justice O'Connor was speaking globally and hypothetically," not saying defendant "automatically entitled" to separate instruction, at 217); *Black v. State,* 816 S.W.2d 350 (Tex.Cr.App.1991) (positive mitigating evidence "qualitatively different from that in *Penry*" and directly relevant "within scope of second punishment issue," 816 S.W.2d at 365); *Boggess v. State,* 1991 WL 87597 (Tex.Cr.App. No. 69,990, delivered May 29, 1991) (evidence presenting defendant in favorable light

"may have indicated to the jury he was less deserving of a sentence of death," but special issue two an adequate vehicle for jury "to consider and respond to [that] particular mitigating evidence," slip opinion, at 3); *Boyd,* supra, 811 S.W.2d at 112; *McGee,* supra, 817 S.W.2d at 80; Opinion in instant cause, at 286–87. Such restrictive views are myopic. Compare *Baldree v. State,* supra, (Baird, J., dissenting).[7]

An inquiry whether there is a probability that defendant would commit criminal acts of violence that would constitute a continuing threat to society is an exercise in predictability. *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); *Jurek v. Texas,* 428 U.S. 262, 274–276, 96 S.Ct. 2950, 2957–2958, 49 L.Ed.2d 929, 939–941 (1976). To predict probabilities that one would commit criminal acts of violence does not implicate one's moral culpability, and is analytically distinct from making a "reasoned moral response" to evidence reflecting a favorable background and positive character. See *Penry,* 492 U.S. at 355, 359, 109 S.Ct., at 2966, 2968, 106 L.Ed.2d, at 302, 304 (Scalia, J., concurring and dissenting). The prognosticator may analyze and weigh facts of the offense alone, *Bower v. State,* 769 S.W.2d 887, at 895 (Tex.Cr. App.1989), or with other relevant evidence of material indicia of past conduct, to predict future behavior, and nothing within the second special issue suggests to jurors that consideration of "moral culpability" is a relevant ingredient in predictability. On the other hand, the mitigator analyzes and weighs all "circumstances of the offender" to determine moral culpability in the premises.[8]

Even though the prognosticator may gratuitously take into account evidence of favorable background and positive character

7. "This is not to say that all evidence 'not relevant to' the special issues is limited to positive character traits or that all evidence 'beyond the scope of' the special issues is limited to disadvantaged background or emotional or mental problems. Relevant mitigating evidence is not that easily pigeon-holed."
*Id.,* at 220, n. 5.

8. ".... The Supreme Court has not expressly limited its view of 'relevant' mitigating evidence to those circumstances necessarily bearing on personal culpability for the particular offense committed or those aspects of the defendant's background or makeup to which his crime may be, at least in part, attributable. [note omitted]. See *Skipper v. South Carolina,* 476 U.S. 1, at 4–5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 7 (1986)."
*Richardson v. State* (Tex.Cr.App. No. 68,934, delivered June 12, 1991) (Clinton, J., dissenting, at 4–5).

traits, as the majority espouses, still a prediction of future dangerousness does not foreclose an *independent* determination, in fairness and mercy, that the defendant does not deserve to be sentenced to death. Yet unless so instructed and provided with a vehicle for expressing its "reasoned moral response," the jury will not know that "it could render a discretionary grant of mercy, or say 'no' to the death penalty, based on [defendant's] mitigating evidence." *Penry,* 492 U.S. at 326, 109 S.Ct., at 2951, 106 L.Ed.2d, at 283.

Decisions of the Court "provide no guidance on how a jury might balance factors that mitigate the defendant's *ethical blameworthiness* with factors that suggest his continued dangerousness when the evidence indicates the presence of both types of factors." Dix, *Administration of the Texas death Penalty Statutes: Constitutional Infirmities Related to the Prediction of Dangerousness,* 55 Tex.L.Rev. 1343, at 1872 (1977).

Nonetheless, the majority continues to assert that the second special issue "clearly encompasses" positive mitigating evidence, in that here the traits shown are not "circumstances of his character which *contributed* to the four murders." *Id.,* at 287. That notion is obviously part of a broader perception of "the central basis for ... *Penry*" suggested in a concurring opinion in *Richardson v. State,* 1991 WL 99949 *7, (Tex.Cr.App. No. 68,934, delivered June 12, 1991), slip opinion at 1–2; it smacks of a "nexus requirement" which this Court recognized and acknowledged in *Lackey v. State,* 819 S.W.2d 111 (Tex.Cr.App.1991) "would seem to conflict with *Lockett* [and] *Eddings,*" *id.,* 819 S.W.2d at 135, n. 10, neither of which lay down any such requisite, see *ante,* 288–89, n. 2; 290–91, n. 4; 291. Moreover, the Court has not adopted that perception, unless it can be confidently said that the majority approved what otherwise appears to be pure *obiter dictum* in *McGee,* 817 S.W.2d at 80; see Baird, J., concurring.

As with the common law right to allocution, "before we decide to take a person's life in our society, our sense of humanity as well as our basic constitutional principles and our desire to reach correct results in serious capital cases, require that we take the time and effort to hear and consider what the person may want to place before us as a reason for not taking his or her life." Benson, *"Texas Capital Sentencing Procedure after Eddings: Some Questions Regarding Constitutional Validity,"* 23 S.Tex.L.J. 315, 332 (1982). *"Lockett* requires the sentencer to listen." *Eddings,* 455 U.S. at 114–115, n. 10, 102 S.Ct. at 876–877, 71 L.Ed.2d at 10–11.

Accordingly, for all those reasons developed *ante,* as well as others presented by my separate opinions in *Stewart, Boyd, Baldree, Black, Boggess, Richardson* and others, I respectfully dissent to continued resistance by the majority against the current of holdings in, e.g., *Lockett, Eddings, Skipper* and *Penry*—now legislatively introduced into and confirmed as a matter of public policy by our own statutory law.[9]

---

**9.** Since September 1, 1991, substantially revised Article 37.071 governs constitutionally substantive and procedural aspects of a punishment hearing where the State seeks the death penalty. Acts 1991, 72nd Leg., Ch. 838, (S.B. 880), 10 Vernon's Texas Session Law 2998.

Article 37.071, § 2(a) expressly authorizes presentation of evidence of "the defendant's background or character or the circumstances of the offense that mitigates against the imposition of the death penalty." The first and third special issues in § 2(b) are abolished in favor of a *"Enmund"* question. Pursuant to § 2(d) the trial court instructs the jury, *inter alia* that in deliberating on the special issues it *shall* consider all evidence admitted, "including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty;" upon an affirmative finding to each issue, it *shall* answer the following issue:

"Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient miti-

gating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed."
*Id.,* § 2(e). For that purpose the jury *"shall* consider mitigating evidence to be evidence that a *juror* might regard as reducing the defendant's *moral blameworthiness."* § 2(f)(4).

Thus, in practically the same terms of pertinent holdings in *Penry* more than two years ago, the Legislature has shown this Court the way out of the morass in which justice in capital cases is still foundering.